**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **THAD YOUNG and SANDRA YOUNG,** ) | **1:09-CV-115  AWI GSA** |
| ) | |
| **Plaintiffs,** ) | **ORDER ON DEFENDANTS'** |
| **v.** ) | **MOTIONS TO DISMISS** |
| ) | |
| **CITY OF VISALIA, et al.,** ) | (Doc. Nos. 36, 38) |
| ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

This is a civil rights case brought by Plaintiffs Thad Young and Sandra Young against 23 defendants.  The City of Visalia ("Visalia"), along with 14 individual officers, (collectively "Visalia Defendants") have filed a Rule 12(b)(6) motion to dismiss.  The City of Farmersville, ("Farmersville") along with Farmersville police officers Troy Evrett and Mike Marquez and Chief Mario Krstic, (collectively "Farmersville Defendants") have also filed a Rule 12(b)(6) motion to dismiss.  The Farmersville Defendants have filed declarations with their motion and request that the Court utilize Rule 12(d) and convert the motion into one for summary judgment. For the reasons that follow, the Court will view the motions only as Rule 12(b)(6) motions, which in turn will be granted in part and denied in part.

**FACTUAL BACKGROUND**

As alleged in the complaint, on November 29, 2007, Defendant Nathan Flaws of the Visalia Police Department obtained a search warrant for property owned and occupied by Plaintiffs.  The search warrant application identified the property as having multiple structures and an address of 29022 Road 164.  The application did not include a description of a separate, adjacent property parcel.  The separate, adjacent property was known locally as the "Old Grange Hall" and had its own separate address, 29006 Road 164, prominently printed on the side of its mailbox.  A wooden fence ran along most of the boundary between the "Old Grange Hall" and 29022 Road 164, and other physical characteristics, including a separate parking lot, further showed the separateness of the two properties.  The Tulare County Superior Court issued the search warrant, but the warrant made no mention of the Old Grange Hall property.

On December 4, 2007, the warrant was executed.  The complaint alleges that all defendants participated in the search of 29022 Road 164 and in detaining Thad Young ("Young").  The defendants also entered and searched the Old Grange Hall despite the fact that this property was not part of the search warrant.  The Old Grange Hall was searched without exigent circumstances, permission, or other legal justification and was searched against Plaintiffs' will.  Defendants are alleged to have known that the Old Grange Hall was not part of 29022 Road 164.  During the search of the two separate properties, the Defendants destroyed or substantially damaged numerous pieces of Plaintiffs' property.

While executing the warrant, Defendants trained their guns on Young, who was working in his shop on the 29022 Road 164 property, and ordered him not to move, but did not identify themselves as law enforcement.  Defendants handcuffed Young and led him out of the shop.  As they were leaving the shop, the Defendants pepper sprayed Young's dogs without reason, despite his pleas not to do so.  Defendants took Young to the residential portion of 29022 Road 164 and set him in a room with other persons.  Young informed Defendants that he had diabetes and a heart condition and both of these conditions required that he take medication.  Young also informed Defendants that he had a back condition for which he took pain medication.  For nearly fives hours, Defendants refused Young access to fluids, the bathroom, and his prescribed

medication despite Young's requests.  Defendants also kept Young seated on an uncomfortable chair and kept him in handcuffs without reason.  During the detention, Defendants requested that Young sign a form.  When Young asked for his eyeglasses, defendants refused and threatened to take him to the police station if he did not sign.  Defendants told Young that they were "just there for the money" and that they were going to put his son away for 37 years because of a gun that Young owned.  Young then signed the form without reading it and later learned that it was a disclaimer of ownership for $2,000 cash that had been discovered during the search.

Young brought this lawsuit in January 2009.  He alleges civil rights violations under 42 U.S.C. § 1983 and various state law claims.

## LEGAL FRAMEWORK

### Rule 8

Federal Rule of Civil Procedure 8(a) sets the pleading standard for claims for relief. "Under the liberal rules of pleading, a plaintiff need only provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Sagana v. Tenorio, 384 F.3d 731, 736 (9th Cir. 2004) (quoting Fed. R. Civ. P. 8(a)).  This rule does "not require a claimant to set out in detail the facts upon which he bases his claim." Conley v. Gibson, 355 U.S. 41, 47 (1957).  The pleadings need only give the opposing party fair notice of a claim and the claim's basis. Conley, 355 U.S. at 47; Sagana, 384 F.3d at 736; Fontana v. Haskin, 262 F.3d 871, 877 (9th Cir. 2001). 47).  The pleadings are to "be construed as to do substantial justice," and "no technical forms of pleading . . . are required." Fed. Rules Civ. Pro. 8(e)(1), 8(f); Sagana, 384 F.3d at 736; Fontana, 262 F.3d at 877.  "Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief." Fontana, 262 F.3d at 877; American Timber & Trading Co. v. First Nat'l Bank, 690 F.2d 781, 786 (9th Cir. 1982). However, "[c]ontext matters in notice pleading.  Fair notice under [Rule 8(a)] depends on the type of case." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); see also Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009).

### Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the

plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Marceau v. Balckfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court must also assume that general allegations embrace the necessary, specific facts to support the claim. Smith v. Pacific Prop. and Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004); Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir. 1994). But, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). As the Supreme Court has recently explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft, 129 S.Ct. at 1949; see Twombly, 550 U.S. at 570; see also Weber v. Department of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.

> The plausibility standard is not akin to a 'probability requirement,' but it asks more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'
> . . .
>
> Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

Iqbal, 129 S.Ct. at 1949-50.  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  Moss v. United States Secret Serv., - - - F.3d - - -, 2009 U.S. App. LEXIS 15694 (9th Cir. Or. July 16, 2009).

If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).  In other words, leave to amend need not be granted when amendment would be futile.  Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

## I.     VISALIA DEFENDANTS' MOTION TO DISMISS

### Defendants' Arguments

Visalia argues that the first through third causes of action should be dismissed because the allegations in the complaint do not sufficiently allege *Monell* liability.  Plaintiffs have failed to plead a policy or custom, but have instead merely alleged inadequate training and/or supervision.  There are no facts alleged that show Visalia's training reflects a policy or custom or how the training is inadequate.

Visalia also argues that Plaintiffs appear to have alleged a state law negligence claim against it.  If Plaintiffs indeed intend to plead such a cause of action, they have failed to allege a specific statute that creates a duty on the part of Visalia.

Finally, the Visalia Defendants argue that the fourth cause of action is inappropriately

1  pled because the allegations are conclusory, ignore principles of immunity, and assume without

2  citation to any authority that the various penal statutes create an implied cause of action.

3      *Plaintiffs' Opposition*

4      Plaintiffs quote from Paragraph 19 and argue that, although a single incident involving a

5  low level officer is insufficient in and of itself to show a custom or policy, the participation of so

6  many officers, including supervisors, in blatant violations of the Fourth Amendment implies the

7  existence of a departmental custom or policy.

8      With respect to an implied cause of action for negligence against the City of Visalia, no

9  such cause of action is pled or intended to be pled.

10     Finally, with respect to the fourth cause of action for violations of numerous state law

11 violations, "Plaintiffs agree to amend these allegations."

12     *Relevant Allegation*

13     In relevant part, Paragraph 19 reads:

14     Defendants City of Visalia . . . City of Farmersville . . . are named herein for
       having so knowingly failed to reasonably select and hire, and to reasonably well
15     educate, instruct and train, and direct, supervise, control and discipline the
       conduct of its officers and supervisors, including the individual defendants named
16     herein, in recurring situations such as are alleged herein, in which their officers',
       deputes', and supervisors' violations of the civil and statutory rights of
17     individuals, including plaintiffs herein, were anticipated and could have been
       prevented by such selection and hiring, education, training, direction, supervision,
18     control, and discipline, that [the Cities of Visalia and Farmersville] set in motion a
       chain of events that made the violations alleged herein foreseeable and
19     substantially certain to occur.  The actions and inactions of the [Cities of Visalia
       and Farmersville] were thus the moving force causing the violations alleged
20     herein.

21 Complaint at ¶ 19.

22     *Legal Framework – Municipal Liability Under 42 U.S.C. § 1983*

23     Municipalities are considered "persons" under 42 U.S.C. § 1983 and therefore may be

24 liable for causing a constitutional deprivation.  Monell v. Department of Soc. Servs., 436 U.S.

25 658, 690 (1978); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).  A

26 municipality, however, "cannot be held liable solely because it employs a tortfeasor – or, in other

27 words, a municipality cannot be held liable under [42 U.S.C. § 1983] under a *respondeat*

28 *superior* theory."  Monell, 436 U.S. at 691; see Long, 442 F.3d at 1185; Ulrich v. City & County

6

of San Francisco, 308 F.3d 968, 984 (9th Cir. 2002).  Liability only attaches where the

municipality itself causes the constitutional violation through "execution of a government's

policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be

said to represent official policy."  Monell, 436 U.S. at 694; Ulrich, 308 F.3d at 984.  Municipal

liability may be premised on: (1) conduct pursuant to an expressly adopted official policy; (2) a

longstanding practice or custom which constitutes the 'standard operating procedure' of the local

government entity; (3) a decision of a decision-making official who was, as a matter of state law,

a final policymaking authority whose edicts or acts may fairly be said to represent official policy

in the area of decision; or (4) an official with final policymaking authority either delegating that

authority to, or ratifying the decision of, a subordinate.  See Price v. Sery, 513 F.3d 962, 966 (9th

Cir. Or. 2008); Lytle v. Carl, 382 F.3d 978, 982 (9th Cir. 2004); Ulrich, 308 F.3d at 984-85;

Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1995).  A "policy" is a "deliberate choice to follow a

course of action . . . made from among various alternatives by the official or officials responsible

for establishing final policy with respect to the subject matter in question."  Fogel v. Collins, 531

F.3d 824, 834 (9th Cir. 2008); Long, 442 F.3d at 1185.  A "custom" for purposes of municipal

liability is a "widespread practice that, although not authorized by written law or express

municipal policy, is so permanent and well-settled as to constitute a custom or usage with the

force of law."  St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988); Los Angeles Police Protective

League v. Gates, 907 F.2d 879, 890 (9th Cir. 1990); see also Bouman v. Block, 940 F.2d 1211,

231-32 (9th Cir. 1991).  Stated differently, a custom is a widespread and longstanding practice

that "constitutes the standard operating procedure of the local government entity."  Trevino, 99

F.3d at 918;  Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992).  "Liability for

improper custom may not be predicated on isolated or sporadic incidents; it must be founded

upon practices of sufficient duration, frequency and consistency that the conduct has become a

traditional method of carrying out policy."  Trevino, 99 F.3d at 918; see also McDade v. West,

223 F.3d 1135, 1141 (9th Cir. 2000); Thompson v. Los Angeles, 885 F.2d 1439, 1443-44 (9th

Cir. 1989).  After proving one of the above methods of liability, the plaintiff must show that the

challenged municipal conduct was both the cause in fact and the proximate cause of the

constitutional deprivation.  See Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008); Trevino, 99 F.3d at 918.

Additionally, a municipality's failure to train its employees may create § 1983 liability where the "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact."  City of Canton v. Harris, 489 U.S. 378, 388 (1989); Long, 442 F.3d at 1186; Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir. 2001).  "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy."  Long, 442 F.3d at 1186.  A plaintiff alleging a failure to train claim must show:  (1) he was deprived of a constitutional right, (2) the municipality had a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons' with whom [its police officers] are likely to come into contact;" and (3) his constitutional injury would have been avoided had the municipality properly trained those officers.  Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007); Lee, 250 F.3d at 681.  "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."  City of Canton, 489 U.S. at 389; Long v. City & County of Honolulu, 511 F.3d 901, 907 (9th Cir. 2007).  A municipality is "deliberately indifferent" when the need for more or different action, "is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers … can reasonably be said to have been deliberately indifferent to the need."  City of Canton, 489 U.S. at 390; Lee, 250 F.3d at 682.  A "pattern of tortious conduct," despite the existence of a training program, or "highly predictable" constitutional violations due to a "failure to equip law enforcement officers with specific tools to handle recurring situations," are circumstances in which liability for failure to train may be imposed.  See Board of County Comm'rs v. Brown, 520 U.S. 397, 407-10 (1997); Long, 442 F.3d at 1186-87.  However, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [municipality] liable."  City of Canton, 489 U.S. at 391; see also Merritt v. County of Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989);

McDade, 223 F.3d at1135, 1141 (9th Cir. 2000).

*Discussion*

With respect to Visalia's arguments about an implied cause of action for negligence, such a cause of action is not expressly identified in the Complaint and Plaintiffs' opposition states that no such cause of action is intended to be pled.  In light of Plaintiffs' representation, the Court will read the complaint as containing no state law negligence claim, either implied or expressed, against Visalia.  Accordingly, dismissal is unnecessary since no such cause of action exists.

With respect to the fourth cause of action, Plaintiffs merely state that they will replead it in light of the Visalia Defendants' motion to dismiss.  The Visalia Defendants do not mention the Fourth Cause of Action or Plaintiffs' statement in their reply brief.  In light of the Plaintiffs' request to replead and the lack of response from the Visalia Defendants, the Court will grant dismissal of the Fourth Cause of Action with leave to amend.

Finally, with respect to municipal liability, the Ninth Circuit has held that, "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice."  Whitaker v. Garcetti, 486 F.3d 572, 581 (9th Cir. 2007).  However, *Iqbal* has made clear that conclusory, "threadbare" allegations that merely recite the elements of a cause of action will not defeat a motion to dismiss.  See Iqbal, 129 S.Ct. at 1949-50.  In light of *Iqbal*, it would seem that the prior Ninth Circuit pleading standard for *Monell* claims (i.e. "bare allegations") is no longer viable.  Nevertheless, in *Lee*, the Ninth Circuit found that the following *Monell* allegations rose above the level of "bare allegations" and stated a claim:

> [Despite the City's] awareness that persons taken into custody by the LAPD --in particular persons with mental disabilities --were often misidentified … the City of Los Angeles deliberately failed [to properly train and supervise their employees (including the police) and] to implement and maintain proper procedures which would have required that prior to the processing for extradition of any person to a foreign jurisdiction, some efforts --such as the verification of fingerprints --are made to match the identity of the person in custody with that of the person wanted. Indeed … the City of Los Angeles maintained an official policy, custom or practice of rounding up people for arrest and/or extradition without taking proper efforts to ensure that the particular person in custody was actually the person being sought …. As a result of the aforementioned policy, practice or

custom, no one bothered to check the identity of Mr. Sanders, thereby causing him to be extradited to New York where he remained imprisoned for two years.

Because of the risk that persons --especially mentally incapacitated persons who are incapable of taking care of themselves --will be mistakenly extradited to a foreign jurisdiction when no steps are taken to confirm their identities is a grave one, the need for training and procedures to guard against such risks is obvious. However, despite this obvious risk, [the] City of Los Angeles []chose to ignore the problem, thereby displaying an official custom, policy or practice which was deliberately indifferent to the rights of persons who were likely to come into contact with the criminal justice system.

Lee, 250 F.3d at 682. The allegations in Lee identified the challenged policy/custom, explained how the policy/custom was deficient, explained how the policy/custom caused the plaintiff harm, and reflected how the policy/custom amounted to deliberate indifference, i.e. explained how the deficiency involved was obvious and the constitutional injury was likely to occur. The Court believes that such allegations would pass muster under Iqbal.

In the case at bar, the relevant allegation in the Complaint is Paragraph 19. The Court reads Paragraph 19 as attempting to allege liability based on inadequate training and hiring practices. Paragraph 19, however, merely makes "threadbare" conclusions that track the elements for Monell liability. Cf. Iqbal, 129 S.Ct. at 1249-50. The complaint does not identify what the training and hiring practices were, how the training and hiring practices were deficient, or how the training and hiring practices caused Plaintiffs' harm. See Querry v. Smale, 2009 U.S. Dist. LEXIS 60889, *10-*11 (S.D. Cal. July 15, 2009); Gelband v. Hondo, 2009 U.S. Dist. LEXIS 51801, *18-*19 (D. Me. June 16, 2009); Lee v. O'Malley, 533 F.Supp.2d 548, 553 (D. Md. 2007); cf. Lee, 250 F.3d at 682. Although Paragraph 19's allegation that Plaintiffs' constitutional injuries were "foreseeable and substantially certain to occur," which is an allegation of deliberate indifference, see City of Canton, 489 U.S. at 390, without identifying the training and hiring practices, how those practices were deficient, and without an identification of the obviousness of the risk involved, the Court cannot determine if a plausible claim is made for deliberately indifferent conduct. Cf. Lee, 250 F.3d at 682. Because the Complaint contains insufficient facts that plausibly indicate a valid Monell claim, dismissal is appropriate. See Iqbal, 129 S.Ct. at 1949-50; Twombly, 550 U.S. at 555; cf. Lee, 250 F.3d at 682. Since it is not clear that amendment would be futile, the Court will do so with leave to amend. See Gompper, 298

F.3d at 898.  Any amended complaint, however, should contain facts that sufficiently show

plausible causes of action.  See Iqbal, 129 S.Ct. at 1949-50; Twombly, 550 U.S. at 555.

## II.     FARMERSVILLE DEFENDANTS' MOTION

### A.     Rule 12(d) Motion

In relevant part, Rule 12(d) provides, "If, on a motion under Rule 12(b)(6) . . ., matters

outside the pleadings are presented to and not excluded by the court, the motion must be treated

as one for summary judgment under Rule 56."  Fed. R. Civ. Pro. 12(d).  Whether to convert a

12(b)(6) motion to one for summary judgment is within the discretion of the district court.  See

Trans-Spec Truck Serv. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008); Campos v. New

Direction Equip. Co., 2009 U.S. Dist. LEXIS 29933 (D. Nev. Apr. 6, 2009); Gauntner v. Doyle,

554 F.Supp.2d 779, 780 (N.D. Ohio 2008); Galloway v. Hadl, 548 F. Supp. 2d 1215, 1218 n.2

(D. Kan. 2008); United States v. International Longshoremen's Ass'n, 518 F. Supp.2d 422, 451

(E.D. N.Y. 2007); Estate of Axelrod v. Flannery, 476 F. Supp.2d 188, 202-03 (D. Conn. 2007).

In fact, one commentator has stated, "As the language of [Rule 12(d)] suggests, federal courts

*have complete discretion* to determine whether or not to accept the submission of any material

beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion . . . ."  5C

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366, at 159 (3d ed.

2004) (emphasis added) (hereinafter "Wright & Miller").  Thus, "a district court is not obliged to

convert a 12(b)(6) motion to one for summary judgment in every case in which a defendant seeks

to rely on matters outside the complaint . . . ."  International Longshoremen, 518 F.Supp.2d at

451; see also Kellogg v. Wyeth, 612 F.Supp.2d 421, 427 (D. Vt. 2008); Kapf v. Professional

Collection Servs., 525 F.Supp.2d 324, 326 (E.D. N.Y. 2007); Galloway, 548 F.Supp.2d at 1218

n.2; Axelrod, 476 F.Supp.2d at 202.  If the district court chooses "to ignore supplementary

materials submitted with the motion papers and determine the motion under the Rule 12(b)(6)

standard, no conversion occurs and the supplementary materials do not become part of the record

for purposes of the Rule 12(b)(6) motion."  Trans-Spec Truck, 524 F.3d at 321; see Swedberg v.

Marotzke, 339 F.3d 1139, 1143 (9th Cir. 2003) ("Upon review of the record, we concluded that

the district court had not relied on the materials that the defendant had submitted and that the

motion was properly characterized as one to dismiss under Rule 12(b)(6)."); Kapf, 525 F.Supp.2d at 326.

Here, the Farmersville Defendants have submitted three declarations in connection with their Rule 12(b)(6) motion.  The three declarations are nearly identical and essentially state that no Farmersville police officer participated in the searches and detentions in this case.[1]   Plaintiffs have responded by filing *inter alia* a declaration by Thad Young that in part indicates that Defendant Troy Evrett participated in Young's detention, see Young Declaration at ¶ 4, and a police report by Defendant Nathan Flaws that indicates that Farmersville police officers were present during the pre-execution warrant briefing and suggests that Farmersville officers may have been "assisting" officers during the search.  See Holland Declaration Exhibit A.  After due consideration, the Court will exercise its discretion and decline to convert the Farmersville Defendants' motion into a Rule 56 summary judgment.  See Kapf, 525 F.Supp.2d at 326; International Longshoremen, 518 F.Supp.2d at 451; see also Kellogg, 612 F.Supp.2d at 427; Galloway, 548 F.Supp.2d at 1218 n.2; Axelrod, 476 F.Supp.2d at 202; Wright & Miller at § 1366.  The Court will instead treat the Farmersville Defendants' motion as a Rule 12(b)(6) motion to dismiss.  See Trans-Spec Truck, 524 F.3d at 321; Swedberg, 339 F.3d at 1143; Kapf, 525 F.Supp.2d at 326.  The materials submitted by the parties are hereby excluded, see Fed. R. Civ. Pro. 12(d), and the Court will not consider them in deciding the motion to dismiss.  See Swedberg, 339 F.3d at 1143.

**B.      Rule 12(b)(6) Motion to Dismiss**

      **1.      California Tort Claims Act**

*Defendants' Argument*

The Farmersville Defendants argue that the California Tort Claims Act requires a person with a potential claim against a public entity to file a claim with that entity before commencing a lawsuit.  Specifically, any claim relating to injuries to persons or property must be filed within six months of accrual and suit must be brought within two years of accrual if no written denial is

---

[1]The Court notes that Defendant Troy Evrett was apparently so eager to obtain summary judgment that he signed a declaration that begins, "I, Mike Marquez."  See Court's Docket Doc. No. 42.  For future filings, the Farmersville Defendants are urged to be more careful with what is signed and submitted to this Court.

issued by the entity.  The complaint only alleges compliance in a conclusory manner without alleging specific details as to how they complied.  There are no allegations that specify when the necessary claims were filed, when the claims were denied, and whether the claims were denied expressly or by operation of law.  Because the allegations are conclusory and compliance with the Tort Claims Act is a mandatory prerequisite, dismissal is appropriate.

### Plaintiffs' Opposition

Plaintiffs argue that the Complaint alleges in concise and plain terms that they complied with the Tort Claims Act.  Should the Court disagree, leave to amend should be granted as amendment would not be futile.

### Relevant Allegation

Paragraph 8 of the Complaint alleges in part:

> Pursuant to the California Tort Claims Act . . . plaintiffs submitted to defendants . . . City of Farmersville administrative tort claims that asserted plaintiffs' right to legal redress based upon the same events as are alleged herein.  Inasmuch as this instant action is filed not later than six months, including pertinent periods of tolling, after notice of rejection of said administrative tort claims was served by said defendants, and/or not later than two years, including pertinent periods of tolling, after said administrative tort claims were deemed rejected by operation of law, plaintiffs have exhausted all administrative remedies and fulfilled all such prerequisites for the maintenance of this instant action as to state law based counts.

Complaint at ¶8.

### Legal Standard

As a prerequisite for money damages litigation against a public entity, the California Tort Claims Act requires presentation of the claim to that entity.  See Cal. Gov. Code § 945.4; State of California v. Superior Court, 32 Cal.4th 1234, 1240-44 (2004) ("Bodde").  Compliance with the Tort Claims Act is an element of a cause of action against a public entity.  Willis v. Reddin, 418 F.2d 702, 704 (9th Cir. 1969); Bodde, 32 Cal.4th at 1240.  As such, "compliance with the claims statute is mandatory and failure to file a claim is fatal to the cause of action."  Hacienda La Puente Unified School Dist. v. Honig, 976 F.2d 487, 494 (9th Cir. 1992); City of San Jose v. Superior Court, 12 Cal.3d 447, 455 (1974); see also Bodde, 32 Cal.4th at 1240.  In federal court, the failure to allege facts that either demonstrate or excuse compliance with the California Tort Claims Act will subject a state law claim to dismissal.  See Mangold v. California Pub. Utils.

Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995); Karim-Panahi v. Los Angele Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988); cf. Bodde, 32 Cal.4th at 1239.  However, the California Tort Claims Act does not apply to 42 U.S.C. § 1983 claims.  Bodde, 32 Cal.4th at 1240; Williams v. Horvath, 16 Cal.3d 834, 842 (1976).

*Discussion*

The Complaint alleges that Plaintiffs submitted their tort claims to Farmersville, that the basis for the claims is the events described in the complaint, that this lawsuit was filed either within six months of receiving a written denial or within two years of the claim being denied by operation of law, and that all prerequisites for maintaining a suit have been met.[2]  Although a bare allegation that the Tort Claims Act has been followed would seem to be a mere conclusion that is insufficient under *Iqbal* and *Twombly*, the Complaint contains more.  The factual allegation that a claim based on the events alleged in the complaint was presented to and rejected by Farmersville gives muscle to the skeletal assertion that all prerequisites of the Tort Claims Act have been fulfilled.  Viewing the allegations in the light most favorable to Plaintiffs, there are sufficient facts alleged that plausibly indicate compliance with the Tort Claims Act.  Dismissal on this basis is denied.

## 2.     Failure To State Claims Under 42 U.S.C. § 1983

*Defendants' Argument*

The Farmersville Defendants argue that in order to be held liable under § 1983, there must be a showing of personal participation by the defendant in the constitutional deprivations.  The Complaint is unduly vague in that it does not identify which officers engaged in which specific conduct.  Although the allegations are in terms of "defendants," some of the allegations clearly indicate an individual actor, e.g. "defendants ordered plaintiff 'move and *I'll* blow you head off' . . . ."  Complaint at p. 10.  An officer is not liable simply because he was present at the search.  Further, the Complaint fails to identify any policy or custom by Farmersville that caused

---

[2]The California Government Code requires that a lawsuit be filed either: (1) within six months of a plaintiff receiving a written denial from the municipal entity; or (2) within two of the date the plaintiff's cause of action accrued if no written denial is given.  Cal. Gov. Code § 945.6(a); Westcon Construction Corp. v. County of Sacramento, 152 Cal.App.4th 183, 190 (2007).

Plaintiffs an injury.

*Plaintiffs' Opposition*

The complaint alleges that the defendants participated in the improper searches and detention.   Plaintiffs argue that the defendant officers had exclusive control over the property and that Thad Young  could not see the specific wrongs of the officers.  The Ninth Circuit has indicated that a group liability instruction may be appropriate when the conduct of the officers prevent the plaintiffs from learning which officers took what actions.  The allegations in the complaint suggest that this case may represent such a scenario.

*Legal Standard*

"A person subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  As such, a plaintiff cannot hold an officer liable "because of his membership in a group without a showing of individual participation in the unlawful conduct."  Jones v. Williams, 297 F.3d 930, 935 (9th Cir. 2002); see Motley v. Parks, 432 F.3d 1072, 1082 (9th Cir. 2005); Chuman v. Wright, 76 F.3d 292, 294 (9th Cir. 1996).  Instead, a plaintiff must "establish the 'integral participation' of the officers in the alleged constitutional violation." Jones, 297 F.3d at 935; see Torres v. City of Los Angeles, 548 F.3d 1197, 1206 (9th Cir. 2008).   "Integral participation" requires "some fundamental involvement in the conduct that allegedly caused the violation." Blankenhorn v. City of Orange, 485 F.3d 463, 481 n.12 (9th Cir. 2007); see Torres, 548 F.3d at 1206.  However, "'integral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation." Boyd v. Benton County, 374 F.3d 773, 780 (9th Cir. 2004).

*Discussion*

With respect to the *Monell* claim against Farmersville, for the same reasons that the Complaint did not state a claim against Visalia, the Complaint also does not state a claim against Farmersville (or the County of Tulare).  Dismissal with leave to amend is appropriate.

With respect to the argument that the first two causes of action (for illegal search and property damage) are unduly vague, the argument in the context of this case is not well taken. Farmersville is correct that a police officer is not liable simply because he was present at a search. See Motley, 432 F.3d at 1082; Jones, 297 F.3d at 935. Farmersville is also correct that liability under 42 U.S.C. § 1983 requires a showing of some personal, inculpatory conduct by a defendant. See Preschooler II, 479 F.3d at 1183; Motley, 432 F.3d at 1082; Jones, 297 F.3d at 935. The Complaint alleges that "defendant detectives, officers, agents, deputies, supervisors, and Farmersville Chief of Police Mario [Krstic]" each entered and searched the Old Grange Hall and the 29022 Road 164 property. See Complaint at ¶¶ 16-18. The Complaint also alleges that all "defendants" caused various types of property damage. See Complaint at ¶ 23-25. The Complaint does not identify the specific conduct of any individual defendant during the searches. Nevertheless, in this case, the Complaint indicates that Thad Young was taken by gun point into a particular room of his house, was made to sit in an uncomfortable chair for five hours, and later was forced to retrieve the defendants' battering ram for them as they were leaving. See Complaint at ¶¶ 30-37. Thus, the Complaint reasonably indicates that Young was kept in a separate room by certain officers/defendants while other officers/defendants searched the properties. The question then becomes, if Young was kept in a separate room while other Defendants searched other rooms and other buildings, how can he allege with more specificity which Defendants did which particular acts during the search? In an ordinary civil lawsuit, a plaintiff should generally be able to identify the particular conduct of individual defendants. That is not the case when one set of defendants prevent the plaintiff from observing the acts of another set of defendants. Cf. Jones, 297 F.3d at 938 n.7 (noting that a jury instruction on group liability may be appropriate where officers deprive the victim of any chance to learn exactly which officers took what actions during a search). In light of the circumstances of the search and seizure alleged in this case, and in light of the allegations that all defendants searched while Young was detained, dismissal of the first and second causes of action is not appropriate. Cf. Gallagher v. City of Winlock Wash., 287 Fed. Appx. 568, 577-78 (9th Cir. 2008) (in the context of summary judgment where officers argued that they did not integrally participate, and in

1  response to an argument that further discovery was warranted in order to "determine which

2  officers did what, to whom, when, where, and with knowledge of what facts," holding that

3  "[w]ithout deposing the defendants, the plaintiffs have not had a fair opportunity to sort out the

4  roles of the various officers.").

5       The situation and context of the third cause of action (for improper detention of Thad

6  Young) is different from the first two causes of action.  Although the Complaint alleges generally

7  that all "defendants" detained Young, the Complaint as a whole indicates that less than all of the

8  defendants actually detained him.  Unlike the defendants who were searching different rooms and

9  different buildings while Young was kept in a separate location, Young would have seen exactly

10  which defendants were detaining him.  It is possible that Young does not know the names of

11  those individual officers who took him by gun point to his house or the names of the individual

12  officers who kept watch over him while other officers searched.  If the identity of any of the

13  "detaining officers" is known, Plaintiffs should expressly allege their identities.  If the precise

14  identities of the "detaining officers" are not known, then Plaintiffs should state that the precise

15  identities are unknown but, if possible, should allege facts that may help to identify such

16  defendants – for example (hypothetically), "two unknown defendants, one male and one female,

17  believed to be police officers of the Visalia police department approached Thad Young with their

18  guns drawn."   In light of the numerous defendants in this case and the nature of the detention

19  alleged, the Court will dismiss the third cause of action as so vague that fair notice of the claims

20  against the defendants is not provided.  See Fed. R. Civ. Pro. 8; Bryson v. Gonzales, 534 F.3d

21  1282, 1290 (10th Cir. 2008); Wong v. United States INS, 373 F.3d 952, 967 (9th Cir. 2004);

22  Refai v. Lazaro, 614 F.Supp.2d 1103, 1116 (D. Nev. 2009).   Dismissal will be with leave to

23  amend.

24

25                              **CONCLUSION**

26       The Visalia Defendants and the Farmersville Defendants have each filed motions to

27  dismiss.  With respect to the Visalia Defendants' motion, the *Monell* claims against Visalia will

28  be dismissed with leave to amend because no policy or custom has been sufficiently alleged.  The

fourth cause of action is dismissed with leave amend in light of Plaintiffs' essential non-opposition to dismissal and the failure of the Visalia Defendants to respond to Plaintiffs' opposition.  Finally, since there is no implied cause of action for state law negligence against Visalia in the Complaint, there is no need for a dismissal.

With respect to the Farmersville Defendants' motion, the Court declines to convert the motion to dismiss into a motion for summary judgment through Rule 12(d) and will instead treat the motion as a pure Rule 12(b)(6) dismissal.  So viewing the motion, Plaintiffs have plausibly alleged compliance with the Tort Claims Act and dismissal of any state law claims due to non-compliance is not appropriate.  As with the *Monell* claims against Visalia, the *Monell* claims against the City of Farmersville (and the County of Tulare) will be dismissed because Plaintiffs have not plausibly alleged a policy or custom.  The first and second causes of action will not be dismissed due to vagueness/ambiguity because the Complaint alleges that all Defendants searched and indicates that it was not possible for Thad Young to observe which Defendants performed which acts during the search.  Finally, the third cause of Action will be dismissed due to vagueness because, unlike the conditions surrounding the search of Plaintiffs' properties, Thad Young should have been able to observe which officers detained him.

Accordingly, IT IS HEREBY ORDERED that:

1.    The Visalia Defendants' motion to dismiss the Fourth Cause of Action is GRANTED and that cause of action is DISMISSED with leave to amend;

2.    The motions to dismiss the *Monell* claims in the First, Second, and Third Causes of Action against the municipal defendants are GRANTED and those claims are DISMISSED with leave to amend;

3.    The Farmersville Defendants' Rule 12(d) conversion request is DENIED;

4.    The Farmersville Defendants' motion to dismiss all state law claims based on a failure to comply with the California Tort Claims Act is DENIED;

5.    The Farmersville Defendants' motion to dismiss the non-*Monell* claims of the First and Second Causes of Action is DENIED;

6.      The Farmersville Defendants' motion to dismiss the non-*Monell* claims of the Third

        Cause of Action is GRANTED with leave to amend; and

7.      Plaintiffs may file an amended complaint within twenty (20) days of service of this order.


IT IS SO ORDERED.

**Dated:    August 17, 2009**                        /s/ Anthony W. Ishii
                                   CHIEF UNITED STATES DISTRICT JUDGE