IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THAD YOUNG and SANDRA YOUNG, ) | 1:09-CV-115 AWI GSA |
| ) | |
| Plaintiffs, ) | ORDER ON DEFENDANTS' |
| v. ) | MOTIONS TO DISMISS |
| ) | |
| CITY OF VISALIA, et al., ) | (Doc. No. 58) |
| ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This is a civil rights case brought by Plaintiffs Thad Young and Sandra Young against 23 defendants. On August 18, 2009, the Court dismissed the original complaint. See Court's Docket Doc. No. 54. On August 28, 2009, Plaintiffs filed a First Amended Complaint ("FAC"). The City of Visalia ("the City"), along with 14 individual Visalia police officers ( the "Visalia Officers"), have filed a Rule 12(b)(6) motion to dismiss. The motion will be granted in part.

**FACTUAL BACKGROUND**

As alleged in the complaint, on November 29, 2007, Defendant Nathan Flaws of the Visalia Police Department obtained a search warrant for property owned and occupied by Plaintiffs. The search warrant application identified the property as having multiple structures and an address of 29022 Road 164. The application did not include a description of a separate,

adjacent property parcel. The separate, adjacent property was known locally as the "Old Grange Hall" and had its own separate address, 29006 Road 164, prominently printed on the side of its mailbox. A wooden fence ran along most of the boundary between the "Old Grange Hall" and 29022 Road 164, and other physical characteristics, including a separate parking lot, further showed the separateness of the two properties. The Tulare County Superior Court issued the search warrant, but the warrant made no mention of the Old Grange Hall property.

On December 4, 2007, the warrant was executed. The complaint alleges that all defendants participated in the search of 29022 Road 164. The defendants also entered and searched the Old Grange Hall despite the fact that this property was not part of the search warrant. From pre-search briefing, the Defendants knew that the warrant did not include the Old Grange Hall. The Old Grange Hall was searched without exigent circumstances, permission, or other legal justification and was searched against Plaintiffs' will. Defendants are alleged to have known that the Old Grange Hall was not part of 29022 Road 164. During the search of the two separate properties, the Defendants destroyed or substantially damaged numerous pieces of Plaintiffs' property.

While executing the warrant, several Defendants trained their guns on Thad Young, who was working in his shop on the 29022 Road 164 property, did not identify themselves as law enforcement, and a female officer told him not to move or she would "blow his head off." Those Defendants handcuffed Young and led him out of the shop. As they were leaving the shop, those Defendants pepper-sprayed Young's dogs without reason, despite his pleas not to do so. These Defendants took Young to the residential portion of 29022 Road 164 and set him in a room with other persons. Young informed these Defendants (and specifically Defendant Abbott) that he had diabetes and a heart condition and both of these conditions required that he take medication. Young also stated that he had a back condition for which he took pain medication. For nearly fives hours, these Defendants refused Young access to fluids, the bathroom, and his prescribed medication despite Young's requests. These Defendants also kept Young seated on an uncomfortable chair and kept him in handcuffs without reason. During the detention, Defendant Abbott requested that Young sign a form. When Young asked for his eyeglasses, Abbott refused

and threatened to take him to the police station if he did not sign. Defendant Gilbert told Young that they were "just there for the money" and that they were going to put his son away for 37 years because of a gun that Young owned. Young then signed the form without reading it and later learned that it was a disclaimer of ownership for $2,000 cash that had been discovered during the search.

Plaintiffs brought this lawsuit in January 2009. The FAC alleges three civil rights violations under 42 U.S.C. § 1983 and various state law claims.

## LEGAL FRAMEWORK

*Rule 8*

Federal Rule of Civil Procedure 8(a) sets the pleading standard for claims for relief. "Under the liberal rules of pleading, a plaintiff need only provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Sagana v. Tenorio, 384 F.3d 731, 736 (9th Cir. 2004) (quoting Fed. R. Civ. P. 8(a)). This rule does "not require a claimant to set out in detail the facts upon which he bases his claim." Conley v. Gibson, 355 U.S. 41, 47 (1957). The pleadings need only give the opposing party fair notice of a claim and the claim's basis. Conley, 355 U.S. at 47; Sagana, 384 F.3d at 736; Fontana v. Haskin, 262 F.3d 871, 877 (9th Cir. 2001). 47). The pleadings are to "be construed as to do substantial justice," and "no technical forms of pleading . . . are required." Fed. Rules Civ. Pro. 8(e)(1), 8(f); Sagana, 384 F.3d at 736; Fontana, 262 F.3d at 877. "Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief." Fontana, 262 F.3d at 877; American Timber & Trading Co. v. First Nat'l Bank, 690 F.2d 781, 786 (9th Cir. 1982). However, "[c]ontext matters in notice pleading. Fair notice under [Rule 8(a)] depends on the type of case." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); see also Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009).

*Rule 12(b)(6)*

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A

dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court must also assume that general allegations embrace the necessary, specific facts to support the claim. Smith v. Pacific Prop. and Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004); Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir. 1994). But, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). As the Supreme Court has recently explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft, 129 S.Ct. at 1949; see Twombly, 550 U.S. at 570; see also Weber v. Department of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.

> The plausibility standard is not akin to a 'probability requirement,' but it asks more than a sheer possibility that a defendant has acted unlawfully. Where a

4

> complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'
>
> . . .
>
> Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

Iqbal, 129 S.Ct. at 1949-50. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv.,572 F.3d 962, 969  (9th Cir. 2009).

If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).  In other words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

## DEFENDANTS' MOTION

### 1.    *Monell* Liability

*Defendants' Arguments*

The City argues that the first through third causes of action attempt to allege *Monell* liability against it for a failure to train and supervise. However, the allegations do not sufficiently show a policy or custom.  There is no description of what the hiring and training practices were, how the training and hiring practices were deficient, or how the practices caused harm.  No new additional facts are alleged.  Plaintiffs again rely on legal conclusions that make it impossible to know whether various unidentified incidents constitute a "pattern of tortious conduct" or render constitutional violations "highly predictable."

*Plaintiffs' Opposition*

Plaintiffs argue that their *Monell* claim is adequately stated as it is premised upon the

5

City's own encouragement of over-exuberant seizure and forfeiture efforts of its officers and simultaneous downplaying of the officers' civil rights violations. Detective Gilbert's statement that the defendants were "just there for the money" indicates the existence of the seizure and forfeiture policy. It is also noteworthy that fourteen officers participated in the search, including several supervisory officers. The City is requesting a hightened pleading standard that is not actually required. Without discovery to obtain the express policies of the City, the pleading standard required by the City could never be met at this early stage in the case.

*Relevant Allegation*

In relevant part, Paragraph 19 reads:

> Defendants [the City]. . . are named herein for having so knowingly failed to reasonably select and hire, and to reasonably well educate, instruct and train, and direct, supervise, control and discipline the conduct of its officers and supervisors, including the individual defendants named herein, in recurring situations such as are alleged herein, in which their officers', deputes', and supervisors' violations of the civil and statutory rights of individuals, including plaintiffs herein, were anticipated and could have been prevented by such selection and hiring, education, training, direction, supervision, control, and discipline, that [the City] . . . set in motion a chain of events that made the violations alleged herein foreseeable and substantially certain to occur.
>
> More specifically, it is believed and on that basis alleged, that [the City] . . . knew that particularly during operations aimed at seizure of assets, at times officers conducted searches that violated the 4th Amendment, including by way of searches without warrant or exigent circumstances and unreasonable detentions. Despite such knowledge and as policy and widespread, consistent practice, [the City] . . . emphasized to their officers to seize assets including cash, while [the City] . . . downplayed or ignored the means by which their officers accomplished the seizures, including violations of civil rights of persons from whom assets including cash, that thereby [the City] . . . caused officers' said violations, including those alleged in this specific case, to become highly likely and predictable.

FAC at ¶ 19.[1]

*Legal Standard*

Municipalities are considered "persons" under 42 U.S.C. § 1983 and therefore may be liable for causing a constitutional deprivation. <u>Monell v. Department of Soc. Servs.</u>, 436 U.S. 658, 690 (1978); <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006). A municipality, however, "cannot be held liable solely because it employs a tortfeasor – or, in other

---

[1] The new *Monell* allegations against the City are found at 9:8-25 of the FAC.

words, a municipality cannot be held liable under [42 U.S.C. § 1983] under a *respondeat superior* theory." Monell, 436 U.S. at 691; see Long, 442 F.3d at 1185; Ulrich v. City & County of San Francisco, 308 F.3d 968, 984 (9th Cir. 2002).  Liability only attaches where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Monell, 436 U.S. at 694; Ulrich, 308 F.3d at 984.  Municipal liability may be premised on: (1) conduct pursuant to an expressly adopted official policy; (2) a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity; (3) a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) an official with final policymaking authority either delegating that authority to, or ratifying the decision of, a subordinate.  See Price v. Sery, 513 F.3d 962, 966 (9th Cir. Or. 2008); Lytle v. Carl, 382 F.3d 978, 982 (9th Cir. 2004); Ulrich, 308 F.3d at 984-85; Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1995).  A "policy" is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Fogel v. Collins, 531 F.3d 824, 834 (9th Cir. 2008); Long, 442 F.3d at 1185.  A "custom" for purposes of municipal liability is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988); Los Angeles Police Protective League v. Gates, 907 F.2d 879, 890 (9th Cir. 1990); see also Bouman v. Block, 940 F.2d 1211, 231-32 (9th Cir. 1991).  Stated differently, a custom is a widespread and longstanding practice that "constitutes the standard operating procedure of the local government entity." Trevino, 99 F.3d at 918;  Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992).  "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Trevino, 99 F.3d at 918; see also McDade v. West, 223 F.3d 1135, 1141 (9th Cir. 2000); Thompson v. Los Angeles, 885 F.2d 1439, 1443-44 (9th

7

Cir. 1989). After proving one of the above methods of liability, the plaintiff must show that the challenged municipal conduct was both the cause in fact and the proximate cause of the constitutional deprivation. See Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008); Trevino, 99 F.3d at 918.

Allegations of *Monell* liability will be sufficient for purposes of Rule 12(b)(6) where they: (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the constitutional injury was likely to occur. See Young v. City of Visalia, 2009 U.S. Dist. LEXIS 72987, *20 (E.D. Cal. Aug. 18, 2009); see also Jackson v. County of San Diego, 2009 U.S. Dist. LEXIS 89753, *8 (S.D. Cal. Sept. 29, 2009); cf. Lee v. City of Los Angeles, 250 F.3d 668, 682 (9th Cir. 2001).

*Discussion*

Plaintiffs' *Monell* claim "is premised upon [the] City's own alleged encouragement of over-exuberant seizure and forfeiture efforts . . . and simultaneous downplaying of . . . civil rights [violations]." Opposition at 4:13-16. The opposition does not address training or hiring, which are mentioned in the first subparagraph of Paragraph 19.[2] In light of Plaintiffs' representations in opposition and the insufficient allegations of the first subparagraph,[3] the Court views the *Monell* claims against the City as premised on the second subparagraph of Paragraph 19.

The relevant portion of Paragraph 19 identifies the practice or policy as encouraging the seizure of assets because of the potential for profit. The Court reads the deficiency as being that, as part of the encouragement to seize, searches and detentions that violated Fourth Amendment rights were downplayed or ignored. The Court believes that the allegations inferentially reflect deliberate indifference. A policy that includes ignoring Fourth Amendment violations does

---

[2] Paragraph 19 is numbered as "19," but in fact contains four paragraphs.

[3] The first subparagraph for the second time is inadequate because it "does not identify what the training and hiring practices were, how the training and hiring practices were deficient, or how the training and hiring practices caused Plaintiffs' harm." Young, 2009 U.S. Dist. LEXIS 72987 at *20.

8

nothing to either encourage respect for/awareness of Fourth Amendment rights or to deter/discourage violations of Fourth Amendment rights. Nevertheless, what is absent from the FAC is an adequate allegation regarding how the policy/practice caused Plaintiffs harm. There is a conclusory statement that the City's conduct caused harm, but there are three separate 42 U.S.C. § 1983 claims against the City and those claims appear to have distinct damages. Nothing in Paragraph 19 or the separate causes of action specifically explain how the challenged policy caused the separate harms identified. Because there are insufficient allegations regarding causation, Plaintiffs have failed to properly state a *Monell* claim and dismissal is appropriate.[4]

It appears that this pleading deficiency may be corrected through amendment. If Plaintiffs seek to hold the City liable under all three of the 42 U.S.C. § 1983 causes of action, then amendments should explain how the deficient policy caused the harm identified in those three claims. The *Monell* claims against the City are dismissed without prejudice.

### 2.     Fourth Cause of Action – The City

*Defendants' Argument*

The City argues that the fourth cause of action contains multiple state law claims based on common law torts and violations of various California Penal Code provisions. However, Plaintiffs have again failed to identify a specific statute that makes the City liable. It does not appear that this short coming can be cured, so dismissal with prejudice is appropriate.

*Plaintiffs' Opposition*

Plaintiffs argue that Government Code § 815.2(a) is a statute that makes the City liable, since that statute makes a government entity liable for the torts committed by employees who act within the scope of employment.

*Legal Standard*

"Except as otherwise provided by statute, a public entity is not liable for an injury,

---

[4] The City argues in reply that it would be ludicrous to hail a municipality into court because its police department encourages the seizure of criminal assets. However, the Court is not holding that a policy of encouraging the seizure of assets that are subject to forfeiture or that are evidence of a crime is improper. Rather, the problem with the policy is that as part of the encouragement process, the City allegedly ignores Fourth Amendment violations. It is the ignoring of the Fourth Amendment violations that is objectionable.

whether such injury arises out of an act or omission of the public entity or public employee or any other person." Cal. Gov't Code § 815. "All government tort liability must be based on statute." Hoff v. Vacaville Unified Sch. Dist., 19 Cal.4th 925, 932 (1998). "The Tort Claims Act draws a clear distinction between the liability of a public entity based on its own conduct, and the liability arising from the conduct of a public employee." de Villers v. County of San Diego, 156 Cal.App.4th 238, 251 (2007). For direct liability, a "specific statute declaring [the entity] to be liable, or at least creating some specific duty of care" must be identified. Eastburn v. Regional Fire Protection Authority, 31 Cal.4th 1175, 1183 (2003); de Villers, 156 Cal.App.4th at 252. For vicarious liability, California Government Code § 815.2 "expressly makes the doctrine of *respondeat superior* applicable to public employers." Hoff, 19 Cal.4th at 932; see also Eastburn, 31 Cal.4th at 1180. Specifically, a "public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Cal. Gov't Code § 815.2(a).

*Discussion*

The Fourth cause of action contains multiple claims and cites several California Penal Code provisions. It is alleged against all defendants. However, the FAC does not allege and Plaintiffs do not argue that the Penal Code provisions create direct liability or a standard of care for municipal entities. No statute for purposes of direct liability against the City has been identified. Because the identitification of a statute is necessary in order to state a claim against a municipal entity, direct liability against the City has not been pled. See Eastburn, 31 Cal.4th at 1183; Hoff, 19 Cal.4th at 932; de Villers, 156 Cal.App.4th at 252.

In opposition, Plaintiffs have identified the *respondeat superior* provision of Government Code § 815.2(a) as their basis for liability against the City. However, § 815.2(a) is not identified in the FAC. Further, there are no allegations under the Fourth cause of action that the individual officers where acting within the course and scope of their employment as municipal employees. In the absence of either citation to Government Code § 815.2(a) or allegations that the Visalia Officers acted in the course and scope of their employment with the City, Plaintiffs have failed to

properly plead vicarious liability against the City. Because it appears that this pleading deficiency can be cured, dismissal will be without prejudice to alleging vicarious liability.

### 3. Fourth Cause of Action – The City's Officers

*Defendants' Argument*

The Visalia Officers argue that the Fourth cause of action is inappropriately pled. Plaintiffs fail to establish an implied right of action for violations of the specific Penal Code sections. The attempt to allege violations of the Penal Code are an attempt to circumvent the immunity granted to law enforcement officers under California Government Code § 820.4. As for the common law tort claims identified under the Fourth cause of action, Plaintiffs do not address qualified immunity with regard to "assault" and fail to allege facts to establish intentional infliction of emotional distress or conversion. The assault claim fails to allege an attempt to commit physical injury. The emotional distress claim fails to allege outrageous conduct by any defendant, intent or reckless disregard by any defendant, or severe emotional distress suffered by either plaintiff (in fact there is no conduct identified as being against Sandra Young). Lastly, the conversion claim fails to allege that any defendant applied the seized property to his/her own use. In reply, the City argues that the *prima facie* tort doctrine is inapplicable because there are established torts that may apply to police misconduct.

*Plaintiffs' Opposition*

Plaintiffs argue that the identified penal code sections indicate culpable conduct. That culpable conduct is actionable under the *prima facie* tort doctrine. Further, the facts alleged are sufficiently "outrageous" for Thad Young to maintain a claim for intentional infliction of emotional distress claim. The officers may have immunity under § 820.4 if the facts show that the officers actually exercised "due care," but that issue cannot be determined in this motion.

*Legal Standard*

Under the "prima facie tort" doctrine, "[o]ne who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances. This liability may be imposed although the actor's conduct does not come within the traditional category of tort liability." Rest.2d, Torts, § 870; 7 Witkin,

11

Summary of Cal. Law (10th ed. 2008), Torts § 20, p. 74. However, "the prima facie tort doctrine is not intended to supplant traditional tort elements or traditional tort defenses," and California courts have "refused to extend it into areas of established tort liability." Cabanas v. Gloodt Assocs., 942 F. Supp. 1295, 1311 (E.D. Cal. 1996).

*Relevant Allegations*

After identifying twelve penal code statutes, Plaintiffs allege in pertinent part:

> A civil cause of action should be implied in plaintiffs' favor based upon defendants' intentional deliberate violations of the foregoing statutes, which were created and intended to protect persons, such as plaintiffs, from such misconduct.
>
> The foregoing misconduct also constitutes the common law torts of assault, intentional infliction of emotional distress, and conversion.

FAC at ¶¶ 43-44.

*Discussion*

After reviewing the Penal Code sections that have been identified, the Court does not believe that application of the *prima facie* tort doctrine is appropriate.

With respect to Penal Code § 661, Plaintiffs state that a violation of this statute occurred when officers failed to intercede to stop civil rights violations by other officers. See FAC at ¶ 42(i). However, § 661 merely states that courts have the discretion to remove a public officer due to neglect or violation of public duty. See Cal. Pen. Code § 661.[5] That is, § 661 empowers courts with the ability to perform a specific act, it does not impose a duty upon, or set a standard of care for, public officers. Indeed, since the statute does not prohibit conduct, the Court is unaware how the statute may be "violated." This section has no possible application to this case and any cause of action based upon it will be dismissed with prejudice.

With respect to Penal Code § 149 for assault by an officer without lawful necessity, Thad Young claims that an assault occurred when officers pointed their guns at him without identifying themselves as law enforcement officers. See FAC at ¶ 42(a). However, assault is an

---

[5] Penal Code § 661 reads in full:
In addition to the penalty affixed by express terms, to every neglect or violation of official duty on the part of public officers, state, county, city, or township, where it is not so expressly provided, they may, in the discretion of the court, be removed from office.

established tort, and Plaintiffs expressly allege that the officers' conduct constitutes the common law tort of assault.  See FAC at ¶ 44.  Since Penal Code § 149 reflects an area of traditional and established tort liability, application of the *prima facie* tort doctrine is inappropriate.[6]  See Cabanas, 942 F.Supp. at 1311.  Plaintiffs' claims based on a violation of Penal Code § 149 will be dismissed with prejudice.  See id.

As for Defendants' argument that the common law assault claim is insufficiently pled because there is no allegation of an attempt to commit a physical injury, that argument is not persuasive.  An attempt to commit a physical injury is not an element of common law assault.  See Judicial Council of California, Civil Jury Instructions ("CACI") § 1301; see also Lowry v. Standard Oil Co. of Calif., 63 Cal.App.2d 1, 6-7 (1944).  Defendants rely exclusively on *Weinstock v. Eissler*, 224 Cal.App.2d 212, 237 (1964) in their motion.  However, *Weinstock* is inapposite because it deals with battery, not assault.  Also, Thad Young alleges that individuals who did not identify themselves as officers pointed a gun at him, causing him fear and anxiety that he would be shot.  See FAC at ¶¶ 30, 42(a).  The pointing of a gun at an individual has been noted to be a sufficient predicate for an assault claim.  See Lowry, 63 Cal.App.2d at 7.  Given the argument made by Defendants, dismissal of Plaintiffs' common law assault claim will be denied.

With respect to Penal Code § 182 for conspiracy, Plaintiffs allege that the officers were knowledgeably complicit in the misconduct of the search operation team.  However, civil conspiracy is an accepted and established doctrine.  See Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal.4th 503, 510-11, 519 (1994); Doctors' Co. v. Superior Court, 49 Cal.3d 39, 44 (1989); CACI § 3600.  There is no need to resort to Penal Code § 182 and dismissal is appropriate.  See Cabanas, 942 F.Supp. at 1311.  Since Plaintiffs have not otherwise alleged conspiracy, dismissal will be without prejudice to amendment.

With respect to Plaintiffs' claim for violation of Penal Code § 118.1 for filing a false report, Plaintiffs alleged that Defendants mischaracterized the Old Grange Hall as an outbuilding of the property for which the warrant issued.  See FAC at ¶ 42(j).  The Court believes that no

---

[6]Further, it has been held that there is no private right of action for a violation of § 149.  Flowers v. County of Fresno, 2009 U.S. Dist. LEXIS 36776 (E.D. Cal. Apr. 15, 2009).

cause of action is stated. Courts have held that Penal Code § 118.1 is not actionable in a civil lawsuit. See Jackson v. City of Pittsburg, 2009 U.S. Dist. LEXIS 50117, *5 (N.D. Cal. June 12, 2009); Hillblom v. County of Fresno, 539 F.Supp.2d 1192, 1212 (E.D. Cal. 2008). Further, Plaintiffs cite no authority regarding whether Defendant Flaws's warrant application to the Superior Court constitutes a crime report filed with the agency that employed him. See Cal. Pen. Code § 118.1.[7] Therefore, causes of action based on Penal Code § 118.1 will be dismissed with prejudice. Jackson, 2009 U.S. Dist. LEXIS 50117 at *5; Hillblom, 539 F.Supp.2d at 1212.

With respect to Plaintiffs' claim for violation of Penal Code § 147 for willful inhumanity or oppression towards a prisoner, the Court has found no case that has allowed this Penal Code provision to form the basis of a civil lawsuit. In fact, the Court has only found cases that have rejected such a private right of action. See Brown v. Cavavnaugh, 2009 U.S. Dist. LEXIS 10962, *6-*7 (E.D. Cal. Feb. 13, 2009); Vega v. Daniels, 2009 U.S. Dist. LEXIS 4227, *29-*30 (E.D. Cal. Jan. 12, 2009); Tilei v. Wan, 2008 U.S. Dist. LEXIS 35161, *6 (E.D. Cal. Apr.28, 2008); Juarez v. Alameida, 2006 U.S. Dist. LEXIS 6066, *33-*34 (E.D. Cal. Feb. 16, 2006). Further, Penal Code § 147 applies to the treatment of "prisoners."[8] Cal. Pen. Code § 147. Plaintiffs have failed to show that Thad Young would be considered a "prisoner" for purposes of § 147. Dismissal with prejudice of claims based on a violation of Penal Code § 147 is appropriate. See Brown, 2009 U.S. Dist. LEXIS 10962 at *6-*7; Vega, 2009 U.S. Dist. LEXIS 4227 at *29-*30; Tilei, 2008 U.S. Dist. LEXIS 35161 at *6; Juarez, 2006 U.S. Dist. LEXIS 6066 at *33-*34.

With respect to Plaintiffs' claims for violations of Penal Code § 146 (unlawful seizure of property), § 487(a) (grand theft), § 496 (receiving stolen property), § 594(b) (vandalism), § 596

---

[7] California Penal Code § 118.1 reads in full:
Every peace officer who files any report with the agency which employs him or her regarding the commission of any crime or any investigation of any crime, if he or she knowingly and intentionally makes any statement regarding any material matter in the report which the officer knows to be false, whether or not the statement is certified or otherwise expressly reported as true, is guilty of filing a false report punishable by imprisonment in the county jail for up to one year, or in the state prison for one, two, or three years. This section shall not apply to the contents of any statement which the peace officer attributes in the report to any other person.

[8] California Penal Code § 147 reads in full: "Every officer who is guilty of willful inhumanity or oppression toward any prisoner under his care or in his custody, is punishable by fine not exceeding four thousand dollars ($4,000) and by removal from office."

14

(willfully poisoning an animal), and § 597 (maliciously wounding an animal), these claims are based on the officers' seizure of personal property, destruction of or damage to personal property, and pepper-spraying Plaintiffs' dogs.[9]  See FAC at ¶¶ 42(b)-42(g).  Each of these penal code sections and the specific instances that allegedly show their violation is conduct that would constitute either common law trespass to chattels or conversion.[10]  See Spates v. Dameron Hosp. Ass'n., 114 Cal.App.4th 208, 221 (2003); Thrifty-Tel, Inc. v. Beznek, 46 Cal.App.4th 1559, 1566-67 (1996); CACI §§ 2100, 2101.  Since trespass to chattels and conversion are established torts, the *prima facie* tort doctrine is not applicable.  See Cabanas, 942 F.Supp. at 1311.  These Penal Code provisions will be dismissed with prejudice.

As for Defendants' argument that the conversion claim fails because there is no allegation that any defendant used the property for their own use, that argument is not persuasive.  Using the seized property for their own use is not an element of conversion or trespass to chattels.  See CACI §§ 2100, 2101; see also Spates, 114 Cal.App.4th at 221; Thrifty-Tel, 46 Cal.App.4th at 1566-67 .  Defendants rely exclusively on *Oakdale Village Group v. Fong*, 43 Cal.App.4th 539, 543-44 (1996).  However, *Oakdale* actually states, "It is not necessary that there be a manual taking of property; it is only necessary to show an assumption of control *or* ownership over the property, *or* that the alleged converter has applied the property to his own use."  Id. (emphasis added).  *Oakdale*'s discussion of applying the property to one's own use is in the disjunctive.  Thus, contrary to Defendants' argument, *Oakdale* does not require an application of the chattel for the tortfeasor's own use.  Given the argument made by Defendants, dismissal of Plaintiffs' common law conversion claim will be denied.[11]

With respect to the intentional infliction of emotional distress ("IIED") claim, Defendants

---

[9] Dogs, as animate property, are considered chattels/personal property.  See People v. Dyer, 95 Cal.App.4th 448, 456 (2002); Di Guilio v. Rice, 27 Cal.App.2d Supp. 775, 781 (1937).

[10] "Money cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved . . . . A generalized claim for money [is] not actionable as conversion."  PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP, 150 Cal.App.4th 384, 395 (2007).  Plaintiffs have alleged that the precise sums of $2,000 and $2,500 in cash were improperly taken by Defendants.  See FAC at ¶¶ 24, 25.

[11] The Court notes that Plaintiffs have not alleged a claim for common law trespass to chattels.  If they wish to add such a claim, they may do so by amendment.

15

argue that the claim has not been pled since the FAC does not allege outrageous conduct by any defendant, intent or reckless disregard by any defendant, or that Plaintiffs suffered severe emotional distress.  The elements of the tort of IIED are: (1) extreme and outrageous conduct by the defendant; (2) the defendant's intention of causing, or reckless disregard of the probability of causing, emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.  See Hughes v. Pair, 46 Cal.4th 1035, 1050 (2009); Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 1001 (1993).  "'Severe emotional distress' means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." Hughes, 46 Cal.4th at 1051; Potter, 6 Cal.4th at 1004.  Conduct is "extreme and outrageous" when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community."  Hughes, 46 Cal.4th at 1050; Potter, 6 Cal.4th at 1001.

      Here, the Fourth cause of action incorporates by reference many of the former allegations.  The Court believes that Plaintiff Thad Young has alleged extreme and outrageous conduct through the allegations that he was deprived of necessary medications (including pain medication, diabetes medication, and nitroglycerin for a heart condition), fluids, and bathroom access, despite repeated requests, for nearly five hours.  See FAC at ¶ 34.  Further, the Court reads the FAC as identifying Brent Abbot, Jeff Gilbert, Mike Marquez, Troy Everett, and a 5'7", stocky, Hispanic Farmersville officer as the defendants who did these acts.  However, Thad Young has not alleged that he suffered "severe emotional distress," as that term has been defined, or that Defendants' acts actually and proximately caused "severe emotional distress."  See Hughes, 46 Cal.4th at 1050-51.  Without factual allegations regarding "severe emotional distress" and causation, Thad Young has failed to state a claim for IIED and dismissal is appropriate.  However, since it appears that this deficiency may be remedied, dismissal will be without prejudice to amendment.

      Finally, to the extent that the Visalia Officers argue for Government Code § 820.4 immunity for all claims under the fourth cause of action, that argument is inadequately developed.  Section 820.4 reads, "A public employee is not liable for his act or omission,

exercising due care, in the execution or enforcement of any law.  Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment." Cal. Gov. Code § 820.4.  Defendants do not explain how the FAC's allegations show that they exercised "due care."  See Lambert v. City of Santa Rosa, 2005 U.S. Dist. LEXIS 30858, *19 (N.D. Cal. November 15, 2005); cf. Ogborn v. City of Lancaster, 101 Cal.App.4th 448, 462 (2002).  In fact, the allegations seem to reflect a lack of due care.  The Court will deny dismissal under Government Code § 820.4 of the fourth cause of action at this time.  However, Defendants will not be precluded from arguing for the application of Government Code § 820.4 at a later time.

   **4.  Fourth Cause of Action – Sandra Young**

*Defendants' Argument*

Defendants argue that Plaintiff Sandra Young appears to be a complete stranger to the Fourth cause of action as there are no allegations of any conduct directed at Sandra Young.

*Plaintiffs' Opposition*

Plaintiffs argue that it is true that Sandra Young was not assaulted and she was not a prisoner.  However, her real property was searched without a warrant, her personal property was maliciously damaged, her personal property was seized, and her pets were injured.  She is a proper party to all of the allegations in the Fourth cause of action except for assault, willful inhumanity to a prisoner, and infliction of emotional distress.

*Discussion*

The cause of action for "inhumanity to a prisoner," i.e. violation of Penal Code § 147, has been dismissed with prejudice.  The facts identified with respect to the IIED and assault claims focus only on Thad Young, and the opposition clarifies that these claims are only made by Thad Young.  This leaves only the claims for conversion that could apply to Sandra Young.

Under the fourth cause of action and the allegations incorporated by reference, the FAC alleges that Defendants destroyed or damaged "personal property belonging to plaintiffs," see FAC at ¶ 23, destroyed and damaged "personal property of plaintiffs," see FAC at ¶ 42(e), pepper-sprayed or maced "plaintiffs' pet dogs," see FAC at ¶¶ 42(f), (g), and willfully and intentionally converted "their [plaintiffs'] property" and injured "plaintiffs' pet animals." See

FAC at ¶ 46.  There are only two Plaintiffs in this case.  By using the plural "plaintiffs," the FAC by definition is identifying both Thad Young and Sandra Young and is essentially alleging that the damaged/destroyed/taken personal property was owned by both Thad Young and Sandra Young.  The FAC sufficiently includes Sandra Young under the fourth cause of action's conversion claim.  Dismissal of Sandra Young's conversion claim is inappropriate because she is not a "stranger" to the conversion claims.

## CONCLUSION

With respect to the *Monell* claims against the City, those claims will be dismissed with leave to amend because Plaintiffs have not sufficiently alleged causation.

With respect to any claims for <u>direct</u> liability against the City under the fourth causes of action, dismissal without leave to amend is appropriate because no statute that creates direct liability was identified in either the FAC or the opposition.  However, Plaintiffs' opposition indicates that they wish to pursue claims against the City based on vicarious liability.  Since vicarious liability is not alleged and it does not appear that such an amendment would be futile, Plaintiffs will be granted leave to amend to include a vicarious liability claim against the City.

With respect to the fourth causes of action against the Visalia Officers, their arguments regarding the common law assault and conversion claims are incorrect, and dismissal is not appropriate.  With respect to the IIED claim, dismissal with leave to amend is appropriate because Thad Young has not pled sufficient facts that show "severe emotional distress" and causation.  With respect to the Penal Code § 182 conspiracy claim, civil conspiracy is an established area of tort law.  The § 182 claim will be dismissed with leave to amend to include a civil conspiracy claim in its stead.  With respect to all other Penal Code based claims, dismissal without leave to amend is appropriate since those claims either create no civil liability, do not apply to this case, or would be included in well established tort law theories.

Finally, with respect to Sandra Young, the fourth cause of action will be read as alleging only conversion claims by her.  Dismissal of the conversion claim is inappropriate since she is adequately identified through the allegations in the complaint.

Accordingly, IT IS HEREBY ORDERED that:

1. The City of Visalia's motion to dismiss the First, Second, and Third Causes of Action against it is GRANTED without prejudice to amendment;

2. The City of Visalia's motion to dismiss the Fourth Cause of Action based on direct liability is GRANTED with prejudice, but Plaintiffs may file an amendment to add a claim for vicarious liability;

3. The Visalia Officers' motion to dismiss the common law assault and conversion claims of the Fourth Cause of Action is DENIED;

4. The Visalia Officers' motion to dismiss the Fourth Cause of Action's Penal Code § 182 conspiracy claim is GRANTED without prejudice to instead alleging a civil conspiracy claim;

5. The Visalia Officers' motion to dismiss Sandra Young from the Fourth Cause of Action is DENIED;

6. The Visalia Officers' motion to dismiss all other remaining Penal Code based claims under the Fourth Cause of Action is GRANTED with prejudice;

7. The Visalia Officers' motion to dismiss the common law IIED claim under the Fourth Cause of Action is GRANTED without prejudice to amendment; and

8. Plaintiffs may file a second amended complaint within twenty (20) days of service of this order.

IT IS SO ORDERED.

Dated:   **January 15, 2010**          **/s/ Anthony W. Ishii**
                                  CHIEF UNITED STATES DISTRICT JUDGE

19