1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **THAD YOUNG and SANDRA YOUNG,** ) | **1:09-CV-115  AWI SKO** |
| ) | |
| **Plaintiffs**, ) | |
| **v.** ) | **ORDER ON FARMERSVILLE** |
| ) | **DEFENDANTS' MOTION FOR** |
| **CITY OF VISALIA, et al.,** ) | **SUMMARY JUDGMENT** |
| ) | |
| ) | |
| **Defendants.** ) | (Doc. No. 114) |
| _____ ) | |

    This is a civil rights case that arises out of the execution of a search warrant by police officers from the City of Visalia and the City of Farmersville ("Farmersville").  Plaintiffs Thad and Sandra Young have alleged federal and state law claims against 23 defendants.  Farmersville and Farmersville police officers Troy Everett ("Everett") and Sergeant Mike Marquez (collectively "Farmersville Defendants") now move for summary judgment.[1]  For the reasons that follow, the motion will be granted in part and denied in part.

**FACTUAL BACKGROUND[2]**

    In December 2007, members of the Visalia Police Department executed a search warrant on Thad Young's property.  DUMF 1.  The search warrant authorized the search of three separate properties/addresses (one of which was owned by Plaintiffs and the other two by Javier Godinez) for narcotics and items commonly associated with narcotics.  See DUMF's 2, 3, 11; Holland Ex.

---

[1]Plaintiffs also named Farmersville Police Chief Mario Krstic as a defendant.  However, Chief Krstic was dismissed from this lawsuit pursuant to stipulation in June 2011.

[2]"DUMF" refers to "Defendants' Undisputed Material Fact" and "PRDUMF" refers to "Plaintiffs' Response to Defendants' Undisputed Material Fact."

9.  The warrant also authorized the search of Javier Godinez's person.  <u>See</u> Holland Ex. 9.  When officers arrived at the Plaintiffs' property, several unknown officers found Thad Young ("Young") in his shop.  <u>See</u> Young Dec. ¶ 7.  Young was detained at gun point, handcuffed, and escorted to the living room of his home.  <u>See</u> <u>id.</u>

Members of the Farmersville police department were present during the execution of the search warrant.  <u>See</u> Holland Dec. Ex. 1 at 58:9-24.  Chief Krstic and Marquez arrived at Plaintiffs' property.  <u>See</u> Marquez Depo. 11:4-6; Krstic Depo. 18:17-25.  Young saw Marquez at the back of one of the properties as Young was being escorted from his shop and into his livingroom.  <u>See</u> Young Dec. ¶ 7.  Further, Justin Thomas, Young's neighbor, saw police cars, including Farmersville police cars, arrive at and surround Young's property.  <u>See</u> Thomas Dec. ¶ 1.  Marquez entered several rooms and buildings on Plaintiffs' property during the execution of the search warrant, and Marquez was present in a bedroom when Detectives Flaws and Gilbert interrogated Young, but Marquez did not actually participate in the search of any buildings that he entered.  <u>See</u> Marquez Depo. 19:10-20:22; Young Dec. ¶ 8.  Chief Krstic understood that the search was a Visalia Police Department narcotics unit operation.  DUMF 5.

A Visalia police officer asked Marquez if a Farmersville police officer could come to Young's property to "stand by."  <u>See</u> Marquez Depo. 10:6-24.  Marquez contacted Everett and had Everett come to the Young's property.  <u>See</u> Marquez Depo. 9:14-16; Everett Depo. 8:4-26.  Later, a Visalia police officer requested that Everett stand by Young in Young's residence while the officers went to another location.  <u>See</u> DUMF 9.  Marquez then left Plaintiffs' property, and the other officers left Young's property to search the two other properties that belonged to Javier Godinez.  <u>See</u> DUMF's 10, 11.  At the time the officers left, no search was occurring and the search of Plaintiffs' property had essentially ended.  <u>See</u> Everett Depo. 31:15-21.

Everett and a rookie police officer complied with the Visalia police officer's request and were left to stand by Young in the living room.  <u>See</u> DUMF 12; Everett Depo. 25:19-26:14.  The rookie officer left 15 to 30 minutes after the other officers left.  DUMF 13.  Everett remained in the residence with Young for 45 minutes to 1 hour after the officers left.  DUMF 14.  While Everett stood by Young, Everett was polite and professional, he did not threaten Young, and

1 Young did not feel that his life was in danger while he sat with Everett and the rookie.  See

2 DUMF's 15, 17, 18.  Young thought that Everett was just "killing time" with Young in order to

3 make the situation easier.  See DUMF 19, 20.  Young really liked Everett.  DUMF 16.  On one

4 occasion, Young asked Everett for permission to take a pain pill, take diabetes medication, and

5 use the restroom.  See Young Depo. 364:14-365:9; DUMF 26.  Everett denied Young's request

6 and replied that Young could not leave the room and could not have anything.  See id. at 365:10-

7 18.  Everett said that once he received a call from the Visalia police, then Young would be able

8 to go.  See Young Dec. ¶ 4.  Everett was later notified by telephone that Young no longer needed

9 to be detained, and Young was immediately released.  See DUMF 28.  Everett uncuffed Young

10 and then immediately left.  See Young Depo. 199:22-24.  When Everett left, Young was able to

11 use the restroom and take his medication.  See Young Depo. 369:25-370:10.  From the time

12 Everett denied Young's request to the time that Young was able to use the restroom and take his

13 medication, about 45 minutes had elapsed.  See id.

14       By the time Everett left, Young had been detained for approximately 6 hours without

15 food, liquid, access to a restroom, or access to heart, diabetes, and pain medications.  See Young

16 Dec. ¶ 4.  Everett was present when Young first asked the Visalia officers for permission to use

17 the restroom, and the first time that Young asked to use the restroom was "several hours" prior to

18 the 45 minutes to 1 hour that Young spent with Everett.  See Young Depo. at 367:10-368:7; see

19 also Young Dec. ¶ 4.  Young believes that Everett was present to hear when Young clearly

20 informed officers of his medical conditions, and need for food, liquid, use of the restroom, and

21 medication, and Everett was also present when Young's son repeated the request.  See Young

22 Dec. ¶ 4.  After three hours of the six hour detention had elapsed, Young was no longer able to

23 control his bladder and wet himself.  See Young Depo.  299:21-300:8.  Visalia police officer

24 Abbott told Young, "If you need to go to the bathroom, do it in your pants."  Id. at 300:13-18.

25 When the other officers had left and Everett was the only officer remaining, Young was sitting

26 on a stool and was still wet.  See id. at 300:2-8.  Everett stood directly in front of Young and had

27 an unobstructed view of Young's pants, which were darkened in the crotch area from when

28 Young lost control of his bladder.  See Supp. Young Dec. ¶¶ 1-2.

1    Everett did not see the search warrant, and did not know the scope of the search warrant.

2    See DUMF's 21, 22.  Marquez did not inform Everett as to the progress in serving the search

3    warrant.  DUMF 23.  Everett did not understand Young to be under arrest.  See Everett Depo.

4    25:19-22.  Everett testified that the other officers did not convey why Young was being held in

5    the living room, but did testify that the reason Young continued to be detained after the

6    conclusion of the search was so that the other officers could go to the other search locations

7    without Young informing the occupants at the other location.  See Everett Depo. 22:23-26, 26:6-

8    14, 31:22-26.  Everett was not told that the suspect associated with the other properties to be

9    searched (Javier Godinez) had been arrested.  DUMF 25.

10

11                              **SUMMARY JUDGMENT FRAMEWORK**

12    Summary judgment is appropriate when it is demonstrated that there exists no genuine

13    issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

14    Fed. R. Civ. P. 56; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v.

15    American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004).  The party seeking summary

16    judgment bears the initial burden of informing the court of the basis for its motion and of

17    identifying the portions of the declarations (if any), pleadings, and  discovery that demonstrate an

18    absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986);

19    Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  A fact is "material" if it

20    might affect the outcome of the suit under the governing law.  See Anderson v. Liberty Lobby,

21    Inc., 477 U.S. 242, 248-49 (1986); United States v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009).

22    A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to

23    return a verdict for the non-moving party.  Anderson, 477 U.S. at 248; Freecycle Sunnyvale v.

24    Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

25    Where the moving party will have the burden of proof on an issue at trial, the movant

26    must affirmatively demonstrate that no reasonable trier of fact could find other than for the

27    movant.  Soremekun, 509 F.3d at 984.  Where the non-moving party will have the burden of

28    proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential

4

element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim.  See James River Ins. Co. v. Herbert Schenk, P.C., 523 F.3d at 915, 923 (9th Cir. 2008); Soremekun, 509 F.3d at 984. If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion."  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000).  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire, 210 F.3d at 1103.  The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'"  Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008).

The opposing party's evidence is to be believed, and all justifiable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Narayan v. EGL, Inc., 616 F.3d 895, 899 (9th Cir. 2010).  While a "justifiable inference" need not be the most likely or the most persuasive inference, a "justifiable inference" must be rational or reasonable.  See Narayan, 616 F.3d at 899.  Inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Sanders v. City of Fresno, 551 F.Supp.2d 1149, 1163 (E.D. Cal. 2008); UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004).  "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial."  Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002).  Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'"  Anderson, 477 U.S. at 249-50; Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006).  If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment.  Nissan Fire,

210 F.3d at 1103.

Finally, the court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but the court is not required to comb through the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references.  See Simmons v. Navajo County, 609 F.3d 1011, 1017 (9th Cir. 2010); Gordon v. Virtumundo, Inc., 575 F.3d 1040, 1058 (9th Cir. 2009).

**DEFENDANTS' MOTION**

### I.     First & Second Causes of Action – 42 U.S.C. § 1983 – Unlawful Search & Destruction of Property

*Defendants' Argument*

Defendants argue that they did not search Young's residence, rather, the search was conducted by Visalia police officers.  This was not a joint operation, Farmersville was not asked to provide officers, and Farmersville officers arrived after the search had begun.

*Plaintiffs' Opposition*

Plaintiffs argue that Thad Young saw Marquez early in the process of executing the search warrant.  Young saw Marquez enter Young's property shortly before other police officers detained Young at gun point.  Young was eventually taken to a bedroom in his residence and was questioned by Visalia police officers, including Detective Flaws.  Marquez was present in the bedroom.  Further, Flaws testified at a related criminal proceeding that "other officers" participated in searching the bedroom.  Marquez must have been one of the officers who searched based on his presence in the bedroom and his prolonged presence at Young's property.

*Legal Standard*

"A person subjects another to the deprivation of a constitutional right, within the meaning of [42 U.S.C. § 1983], if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  As such, a plaintiff cannot hold

an officer liable simply because of the officer's "membership in a group without a showing of individual participation in the unlawful conduct." Jones v. Williams, 297 F.3d 930, 935 (9th Cir. 2002); see Motley v. Parks, 432 F.3d 1072, 1082 (9th Cir. 2005); Chuman v. Wright, 76 F.3d 292, 294 (9th Cir. 1996). That is, "holding an officer liable who was merely present at the [incident] is not permissible." Jones, 297 F.3d at 939; see Motley, 432 F.3d at 1082; Lolli v. County of Orange, 351 F.3d 410, 417 (9th Cir. 2003). A plaintiff must "establish the 'integral participation' of the officers in the alleged constitutional violation." Jones, 297 F.3d at 935; see Torres v. City of Los Angeles, 548 F.3d 1197, 1206 (9th Cir. 2008). "Integral participation" requires "some fundamental involvement in the conduct that allegedly caused the violation." Blankenhorn v. City of Orange, 485 F.3d 463, 481 n. 12 (9th Cir. 2007); see Torres, 548 F.3d at 1206. Further, as long as there is sufficient evidence to permit a jury to infer that the individual defendants each participated in a constitutional deprivation, the plaintiff's inability to identify which defendants performed which specific acts is not fatal. See Jones, 297 F.3d at 935-36; Rutherford v. City of Berkeley, 780 F.2d 1444, 1448 (9th Cir. 1986).

*Discussion*

    1.    Officer Marquez

        a.    First Cause of Action

The first cause of action alleges that Defendants illegally entered and searched the Old Grange Hall.[3] See Doc. No. 70 at ¶¶ 17-18. Marquez testified that he entered the Old Grange Hall, saw other officers searching the Old Grange Hall, knew that Young owned the Old Grange Hall, did not leave the Old Grange Hall with any property, and was in the Old Grange Hall for 5 to 10 minutes. See Marquez Depo. 17:1-20:10. Marquez also testified that he did not participate in the search of any of the buildings. See DUMF 8; Marquez Depo. 20:19-22.

If an individual has a reasonable expectation of privacy in a property or building, then the Fourth Amendment prohibits government officials from entering that property or building in the absence of a warrant, exigent circumstances, or permission. See Michigan v. Clifford, 464 U.S.

---

[3] As stated above, the search warrant identified three properties. The one property owned by Young was 29022 Rd. 164, which is Young's residence. See Holland Ex. 9; Young Dec. ¶ 1. The Old Grange Hall's address is 29006 Rd. 164, and this address is not identified in the search warrant. See Holland Ex. 9; Young Dec. ¶¶ 1, 2.

287, 292-93 (1984); <u>Conner v. City of Santa Ana</u>, 897 F.2d 1487, 1490-92 (9th Cir. 1990).  Here, because Marquez admits that he entered and remained in the Old Grange Hall for 5 to 10 minutes, he is required to explain and show how his entry and presence in the Old Grange Hall was permissible under the Fourth Amendment.  Marquez's motion centers around the assertion that he did not participate in any searches.  <u>See</u> DUMF 8.  The evidence shows that Marquez did not "actively search" the Old Grange Hall.  Nevertheless, Marquez admitted to entering, remaining, and observing inside the Old Grange Hall.  <u>See</u> Marquez Depo. 17:1-20:10.  The Fourth Amendment protects against both unreasonable entry into property and unreasonable "active searches."  <u>See</u> <u>United States v. Washington</u>, 387 F.3d 1060, 1071 (9th Cir. 2004) (discussing separate Fourth Amendment violations for entry and search of a hotel room); <u>LaLonde v. County of Riverside</u>, 204 F.3d 947, 954 (9th Cir. 2000) (noting Fourth Amendment's prohibition against warrantless entry); <u>United States v. Becker</u>, 929 F.2d 442, 446 (9th Cir. 1991) ("A warranted search is unreasonable if it exceeds in scope or intensity the terms of the warrant.").  That Marquez did not actively search while inside the Old Grange Hall fails to address the issue of Marquez's initial entry into the Old Grange Hall, which is alleged to be unconstitutional.

The Court views the first cause of actions as complaining about two Fourth Amendment violations: an unreasonable entry and an unreasonable search.  Because there is no evidence that Marquez actively searched, summary judgment on this part of the cause of action is appropriate.  However, because Marquez does not address the propriety of his entry into the Old Grange Hall, summary judgment on this part of the first cause of action will be denied.

b.      Second Cause of Action

The second cause of action alleges that in the course of searching the Old Grange Hall and Young's residence, the Defendants destroyed various pieces of property.  Again, Marquez testified in his deposition that he did not participate in any searches.  <u>See</u> Marquez Depo. 20:19-22.  Plaintiffs have shown that Marquez was present early in the process of executing the search warrant.  <u>See</u> Young Dec. ¶ 7.  Plaintiffs have also shown that Marquez was present in the Old Grange Hall for 5 or 10 minutes, <u>see</u> Marquez Depo. 17:1-20:10, and present in the bedroom

when Young was taken to there and questioned by Visalia police officers.  See id. Young Dec. at

¶ 8.  However, Young did not testify that he saw Marquez searching, and he has not presented

any form of evidence – be it statements by other officers, statements by Marquez, statements by

witnesses, or conduct by Marquez – that reasonably show that Marquez actively searched or

actually moved or damaged any property.  Instead, Plaintiffs have only shown that Marquez was

present on Young's property while other officers actively searched.  "[H]olding an officer liable

who was merely present at the [incident] is not permissible."  Jones, 297 F.3d at 939; see Motley,

432 F.3d at 1082; Lolli, 351 F.3d at 417.

Because the evidence shows that Marquez did not actively search or damage any

property, summary judgment on the second cause of action in favor of Marquez will be granted.

2.      Officer Everett

In their motion for summary judgment, Defendants assert that they did not participate in

the search of Young's properties.  See Doc. No. 114-1 at 6:8-11.  However, the only evidence

submitted that expressly addresses participation in the searches is DUMF 8.  That DUMF states

that Marquez did not participate in any searches, and cites to Marquez's deposition testimony.

See DUMF 8.  What is missing, however, is a DUMF and evidence that shows that Everett did

not participate in any searches.  Without citation to evidence or a DUMF that supports the

assertion of non-participation by Everett, Everett has not met his initial burden.  See Nissan Fire,

210 F.3d at 1102-03.  Therefore, summary judgment on the first two causes of action in favor of

Everett must be denied.  See id.


**II.      Third Cause of Action – 42 U.S.C. § 1983 – Unreasonable Detention**

*Defendants' Argument*

Defendants argue that officers who execute a search warrant have the right to detain an

occupant during the search.  The law enforcement interests that support such a detention also

support Young's detention.  There was probable cause to believe that the three properties listed

in the warrant were connected to each other via illegal drug activity.  It was reasonable to

conclude that Young may warn the inhabitants of the other properties of an impending search,

which could lead to destruction of evidence and the flight of suspects.

Everett argues that he reasonably relied on the instruction of a Visalia police officer to stand by Young. Officers who reasonably rely on representations and requests of others officer receive immunity for their actions. Everett's reliance was reasonable in that he did not see the search warrant, did not know the scope of the search warrant, and was not told that Godinez had been arrested.

Furthermore, Everett was polite and professional to Young, and did not threaten Young in any manner. Young liked Everett and did not feel like his life was in danger while he sat with Everett. Everett was only with Young for 45 to 1 hour. Everett's refusal to permit Young to use the restroom and take medication was reasonable because: (1) Everett was not the investigating officer and did not know whether a urine sample would be necessary; (2) it is standard procedure not leave a detained individual alone; (3) it is standard procedure that detained individuals are not permitted to take medication unless it is a medical emergency or there is medical supervision; and (4) the amount of time that Everett prevent Young from using the restroom was negligible.

Alternatively, qualified immunity is appropriate because it was unclear when the search of Young's residence actually concluded. Since the three residences to be searched were all intertwined and covered by the same search warrant, it is not clear whether the search ended after Visalia officers finished seizing and logging Young's property at his residence, or whether the search ended after the Visalia officers made entry at the other two addresses. A reasonable officer could have believed that the search did not finish until after the search teams had begun to search the other two residences.

### *Plaintiffs' Opposition*

With respect to Everett, Young argues that summary judgment is inappropriate. First, the conditions of the prolonged detention made the detention unreasonably painful, degrading, and prolonged. There was no reasonable basis for Everett to refuse Young liquids, prescription medication, or access to a bathroom, which resulted in Young wetting himself. Everett was aware that Young had wet himself, yet Everett refused to permit Young to use the restroom. Second, use of the handcuffs was unreasonable because there was no reason to suspect that

Young was involved in any criminal activity, he was not armed, and there is nothing to suggest
that he posed a risk to the officer.  Third, when the other officers left Everett with Young, the
search of Young's property was complete and Everett knew it.  With the conclusion of the
search, there was no longer a basis to keep Young detained.

With respect to Marquez, he is liable as Everett's supervisor.  Marquez called Everett to
detain Young, and Marquez knew that Everett would be detaining Young despite the fact that the
search of Young's property had terminated.  Because it was unreasonable to detain Young
beyond the expiration of the search, Marquez is liable for the detention.

*Legal Standards*

Detention Pursuant To A Search Warrant

Police officers may detain a building's occupants while executing a search warrant that is
founded on probable cause.  See Michigan v. Summers, 452 U.S. 692, 704-05 (1981); Dawson v.
City of Seattle, 435 F.3d 1054, 1065 (9th Cir. 2005).  The ability to detain an occupant is a
recognition of at least three law enforcement interests: (1) preventing flight in the event that
incriminating evidence is found; (2) minimizing the risk of harm to the officers and the
occupants; and (3) facilitating the orderly completion of the search (e.g. the occupant may open a
locked door or container, thereby avoiding damage to the door or container).  Summers, 452 U.S.
at 702-03; Dawson, 435 F.3d at 1066.  An officer's authority to detain incident to the execution
of a search warrant "is categorical."  Muehler v. Mena, 544 U.S. 93, 98 (2005); Tekle v. United
States, 511 F.3d 839, 848 (9th Cir. 2007).  As such, the detention of the occupant may last for the
duration of the actual search without requiring further justification.  See Muehler, 544 U.S. at 98;
Dawson, 435 F.3d at 1066.  Further, when executing a search warrant, the officers are permitted
to use reasonable force to detain an occupant and to take reasonable measures to secure the
premises to be searched.  See Los Angeles County v. Rettele, 550 U.S 609, 614 (2007);
Muehler, 544 U.S. at 98-99.  However, police officers do not have "unfettered authority to detain
a building's occupants in any way they see fit," rather, the "detention must be conducted 'in a
reasonable manner.'"  Tekle, 511 F.3d at 848; Dawson, 435 F.3d at 1066.  Whether a detention
was "carried out in an unreasonable manner is determined under an objective test, on the basis of

1    the facts and circumstances confronting the officers." Franklin v. Foxworth, 31 F.3d 873, 876

2    (9th Cir. 1994).  Where law enforcement interests arguably justify a detention, courts balance

3    those interests against the intrusiveness of the seizure to the persons detained.  See Dawson, 435

4    F.3d at 1066; Ganwich v. Knapp, 319 F.3d 1115, 1120 (9th Cir. 2003).  A detention conducted in

5    connection with a search warrant may be unreasonable if it is unnecessarily painful, degrading, or

6    prolonged, or if it involves an undue invasion of privacy.  See Meredith v. Erath, 342 F.3d 1057,

7    1062 (9th Cir. 2003); Franklin, 31 F.3d at 876; see also Rettele, 550 U.S. at 615 (". . . special

8    circumstances, or possibly a prolonged detention, might render a search unreasonable.");

9    Summers, 452 U.S. at 705 n.21 (same).

10                           Qualified Immunity

11          A court employs a tiered analysis for determining qualified immunity.  See Saucier v.

12   Katz, 533 U.S. 194, 200-02 (2001); CarePartners LLC v. Lashway, 545 F.3d 867, 876 n.6 (9th

13   Cir. 2008).  However, lower courts need not strictly follow the tiered sequence in analyzing

14   qualified immunity, but instead have the discretion to dispose of the issue at step two without

15   addressing step one.  Pearson v. Callahan, 555 U.S. 223, 236 (2009); Glenn v. Washington

16   County, 673 F.3d 864, 870 (9th Cir. 2011).  Under the first step, the court determines whether,

17   "taken in the light most favorable to the party asserting the injury, do the facts show the officer's

18   conduct violated a constitutional right?"  Saucier, 533 U.S. at 201; Bingue v. Prunchak, 512 F.3d

19   1169, 1173 (9th Cir. 2008).  If the answer is "no," then the inquiry ends and the plaintiff cannot

20   prevail; if the answer is "yes," the court continues the analysis.  See Saucier, 533 U.S. at 201;

21   Bingue, 512 F.3d at 1173; Johnson v. County of L.A., 340 F.3d 787, 793-94 (9th Cir. 2003).

22   Under the second step, the court determines "whether the right was clearly established," and

23   applies an "objective but fact-specific inquiry."  Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir.

24   2007); see Saucier, 533 U.S. at 202.  The critical question is whether "the contours of the right

25   were sufficiently clear that a reasonable official would understand that what he is doing violates

26   the right."  Saucier, 533 U.S. at 202; Inouye, 504 F.3d at 712.  Whether a right is clearly

27   established must be "undertaken in light of the specific context of the case, not as a broad general

28   proposition."  Saucier, 533 U.S. at 201; Bingue, 512 F.3d at 1173.  If the officer could have

1  reasonably, but mistakenly, believed that his conduct did not violate a clearly established

2  constitutional right, then the officer will receive qualified immunity.  See Saucier, 533 U.S. at

3  205-06; Johnson, 340 F.3d at 794.

4      *Discussion*

5      Young contends that his detention by Everett was unconstitutional in two respects – it

6  was unreasonably carried out and it was not authorized by the search warrant because the search

7  of Young's property had terminated by the time that Everett "stood by" him.  Young contends

8  that Everett is liable for detaining him and that Marquez is liable as a supervisor because he

9  condoned and/or ordered the detention.  The Court will address Young's contentions separately.

10     A.     Officer Everett

11            1.      Detention After Search Of Property

12     Courts have indicated that, when a search warrant covers multiple properties, and the

13 police have searched or are searching one of the properties, reasonable steps may be taken to

14 prevent the occupants of the searched property from contacting/warning the occupants of the yet

15 to be searched properties.  See Ganwich, 319 F.3d at 1123; Leveto v. Lapina, 258 F.3d 156, 171

16 (3d Cir. 2001); United States v. Timpani, 665 F.2d 1, 2-3 (1st Cir. 1981); Lee v. City of San

17 Leandro, 2011 U.S. Dist. LEXIS 59865, *4 n.3 (N.D. Cal. June 3, 2011).  Further, the Ninth

18 Circuit has held that a "facially valid direction from one officer to another to stop a person or a

19 vehicle insulates the complying officer from assuming personal responsibility or liability for his

20 act done in obedience to the direction."  United States v. Robinson, 536 F.2d 1298, 1299 (9th

21 Cir. 1976); see also Motley, 432 F.3d at 1082.

22     Here, the evidence indicates that Sgt. Marquez ordered Everett to assist the Visalia

23 officers.  The Visalia officers then requested that Everett "stand by" Young, so that Young would

24 not inform or warn the occupants of the other properties before the officers could begin their

25 search of those properties.  See Everett Depo. 22:23-26, 31:22-26.

26     While Plaintiffs contend that the search of the Old Grange Hall was outside the scope of

27 the search warrant, there is no argument that the search of Young's property at 29022 Rd. 164,

28 which was where he was detained, was improper.  Further, Young has not shown that the request

for Everett to stand by/detain him was a facially invalid order.  As cases like *Ganwich*, *Leveto*,

*Timpani*, and *Lee* indicate, officers may take reasonable steps to prevent occupants of a searched

property from contacting the occupants of a soon to be searched property.[4]  Because the evidence

indicates that Everett was following a facially valid direction, Everett did not act unreasonably by

merely detaining Young after the search of Young's property had ended.  Cf. Ganwich, 319 F.3d

at 1123; Leveto, 258 F.3d at 171; Timpani, 665 F.2d at 2-3; Robinson, 536 F.2d at 1299; Lee,

2011 U.S. Dist. LEXIS 59865, *4 & n.3.

Alternatively, in light of the principles embraced by *Ganwich*, *Leveto*, *Timpani*, and

*Robinson*, a reasonable officer in Everett's position could have reasonably believed that it was

lawful to continue to detain Young until the other properties were secured.  Thus, Everett is

entitled to qualified immunity on any claims that are based on the fact that he detained Young

after the searching of Young's premises had ended.  See Saucier, 533 U.S. at 205-06; Johnson,

340 F.3d at 794.

### 2.    Manner of Detention

Whether a detention was "carried out in an unreasonable manner is determined under an

objective test, on the basis of the facts and circumstances confronting the officers."  Franklin, 31

F.3d at 876.  Viewing the evidence in the light most favorable to Young, and making all

reasonable inferences in his favor, the evidence indicates that Everett confronted the following

circumstances: (1) Everett likely heard Young's prior requests to the Visalia police officers for

use of the restroom and access to water, food, and prescription medication, see  Young Dec. ¶ 4;[5]

(2) Everett denied the request made directly to him by Young for access to the restroom and

medication, see Young Depo. 364:14-365:18; DUMF 26; (3) Everett likely knew that Young was

sitting in wet jeans after Young had earlier lost control of his bladder, see Young Depo. 300:2-8;

---

[4]The Court notes that the allegations in *Lee* are similar to the allegations in this case.  *Lee* rejected a claim that was based in part on officers prohibiting Lee from using a telephone.  Citing *Ganwich*, the district court noted, "Defendants were not unreasonable in prohibiting plaintiff from using the telephone, as plaintiff could have used the telephone to contact, either directly or indirectly, an occupant of the second residence."  See Lee, 2011 U.S. Dist. LEXIS 59865 at *4 n.3

[5]Everett contends that the evidence is unduly speculative to support this conclusion.  Viewing the evidence in the light most favorable to Young, the Court disagrees and finds it sufficient, for purposes of this motion, to support the conclusion that Everett likely heard Young's prior requests.

Supp. Young Dec. ¶¶ 1, 2;[6] (4) the search of Young's property had ended when Everett began his

detention, <u>see</u> Everett Depo. 31:15-21; (5) Young was in handcuffs the entire time, <u>see</u> Young

Depo. 199:22-24; Young Dec. ¶ 7; (6) there is no evidence that Young was ever hostile,

aggressive, uncooperative, or dangerous; (7) there is no evidence that Young was placed under

arrest; (8) the reason why Everett was "standing by" was to prevent Young from contacting

individuals at the other properties that were still to be searched, <u>see</u> Everett Depo. 31:22-26; (9)

Young was the only individual being detained; and (10) by the time Everett had left, he knew that

Young had been detained and in handcuffs for at least 3 to 4 hours.[7]

      The three police interests that are served by detaining individuals while executing a

search warrant were rather weak at the time Everett detained Young.  <u>Cf.</u> <u>Dawson</u>, 435 F.3d at

1066.  First, there was no risk that Young would evade or flee.  Everett knew that the search of

Young's property had ended, so no further incriminating evidence was going to be found on

Young's property.  Second, Everett has neither argued nor shown that Young posed any risk to

him.  Everett knew that Young had been detained for some hours, yet there is no indication that

Young acted violently, belligerently, or hostile.  The evidence presented simply indicates that

Young was a cooperative individual who made several requests for medications, water, food, and

the restroom.  Third, while the search of Young's property had ended, the search warrant was

still being executed.  Everett understood that he was "standing by" Young to ensure that Young

---

[6]Everett contends that the evidence is unduly speculative to support this conclusion, in part because Young declares that he is "nearly certain" that he was wearing jeans and Everett expressly declares that he did not know that Young was sitting in wet jeans.  While Young is "nearly certain" he was wearing jeans, he also declared without limitation that his "pants" were darkened in color in the crotch area.  <u>See</u> Supp. Young Dec. ¶¶ 2, 3.  Whether Young was wearing jeans or some other type of pants does not matter, the key is that the pants were darkened around the crotch.  As for Everett's denial, the veracity of the denial is at issue in light of a prior declaration submitted by Everett in this case.  In the prior declaration, Everett stated that he did not participate in any detention of Young.  <u>See</u> Doc. No. 42 at ¶ 6.  Everett now acknowledges that he detained Young.  While Everett has attempted to explain the previous declaration, significant credibility concerns remain from Everett's declarations.  <u>See</u> Doc. No. 124-2.  Thus, viewing the evidence in the light most favorable to Young, the Court finds the evidence sufficient on this point.

[7]The Court derives the "3 to 4 hours" figure by viewing the evidence in the light most favorable to Young.  Young testified that he made his first request for medication, food and water, and a restroom to the Visalia police "several hours" before Everett began his individual detention of Young.  <u>See</u> Young Depo. at 367:10-368:7.  The Court interprets "several hours" to mean "2 to 3 hours."  The evidence indicates that Everett was present and likely heard this request.  <u>See</u> Young Dec. ¶ 4.  Combining this 2 to 3 hour period with Everett's own 45 minute to 1 hour detention leads to a conclusion that Everett was aware that Young had been detained for 3 to 4 hours by the time he released Young.

1   did not contact anyone at the other locations.  Thus, what was required to continue to execute the

2   search warrant was to take steps to limit Young's communications.

3        Given that the police interests at stake required only limiting Young's ability to

4   communicate, Everett's conduct does not appear reasonable.  Permitting Young to take his

5   prescription medication would not have provided any opportunity for Young to contact the

6   occupants of the other search locations, nor would it have endangered Everett in any way.  The

7   Court sees no police interest that was furthered by denying Young access to his medications.

8   Similarly, permitting Young to use the restroom or to get dry pants or underwear would likely not

9   have provided Young an opportunity to contact the occupants of the other search locations.  To

10  the extent that there remained any concerns about safety or communication, Everett could have

11  possibly required Young to keep all doors open or to move telephones to the living room.

12  Requiring Young to sit in his urine soaked pants was unnecessary and degrading, and at best

13  appeared to serve very minor police interests.  Finally, handcuffs constitute a use of force and, in

14  the context of executing a search warrant, their use must be justified under the circumstances.

15  See Tekle, 511 F.3d at 849; Meredith, 342 F.3d at 1062-63.  Indeed, the First and Sixth Circuits

16  have adopted Justice Kennedy's concurrence in *Muehler v. Mena*, 544 U.S. 93, 102-03 (2005)

17  that, while executing a search warrant, handcuffs should be removed once it is apparent that

18  removing them will not compromise officer safety.  See Mlodzinski v. Lewis, 648 F.3d 24, 36

19  (1st Cir. 2011); Bletz v. Gribble, 641 F.3d 743, 755 (6th Cir. 2011).  Here, it does not appear

20  that the continued use of handcuffs on Young was justified.  There is no evidence that Young

21  posed a danger to Everett, Young appears to have been cooperative and compliant, Young was

22  not identified as a person to be searched in the search warrant, and it appears that insufficient

23  evidence was found to justify arresting Young despite a full search of his property.  Therefore,

24  the totality of the evidence indicates that Young's detention was conducted in an unreasonable

25  manner because it was unnecessarily degrading, painful, and restrictive.  See Franklin, 31 F.3d at

26  876; Lee, 2011 U.S. Dist. LEXIS 59865 at *4.

27       Everett argues that his conduct was reasonable and relies heavily on the testimony of his

28  expert witness, Stephen D'Arcy.  In pertinent part, D'Arcy opines that:

Officer Everett acted reasonably when he prevented Mr. Young from going to the bathroom and accessing his medication even though Mr. Young had wet himself during his detention. Officer Everett was not the investigating officer and did not know the circumstances of the investigation such as whether a urine sample would be necessary. It is standard procedure not to leave a detained individual alone. In addition, Officer Everett prevented Mr. Young from going to the bathroom for only 45 minutes to an hour, a negligible amount of time. Moreover, it is standard operating procedure that once a person is detained, they are not allowed to take medication, prescribed or otherwise, unless it is a medical emergency or they do so while under medical supervision. There do not appear to be any facts indicating that there was a medical emergency in this case.

D'Arcy Dec. ¶ 12. Additionally, the Court required Defendants to clarify what D'Arcy meant by "standard operating procedure" and to identify particular POST standards regarding prescription medication. In response, D'Arcy submitted a supplemental declaration and explained:

. . . police officers are not trained how to administer medication to detained individuals. There are no POST standards that explain how or when police officers should give prescribed medication to detained individuals. Police officers are trained that in the case of medical emergencies, they are to seek medical attention. My review of the depositions of [Young] and [Everett] show that a medical emergency did not exist during the time that [Everett].

Supp. D'Arcy Dec. ¶ 1. Despite D'Arcy's opinions, summary judgment is not appropriate.

First, D'Arcy's opinion that Everett was not the investigating officer and did not know the scope of the warrant is not persuasive. Everett may not have known the scope of the warrant, but Everett knew that the search of Young's property had ended and understood why he was to "stand by" Young. Everett was to "stand by" Young in order to prevent Young from communicating with or contacting the occupants of the other search locations. See Everett Depo. 31:22-26. Everett was not "standing by" Young to later arrest him, or to make sure that he did not destroy evidence, or to later collect a fluid sample from him.[8] The reasonableness of Everett's conduct should be viewed through Everett's understanding of his orders, because why Everett was detaining Young is a key part of the circumstances facing Everett. See Franklin, 31 F.3d at 876 (reasonableness of a detention is determined by objectively examining the circumstances confronting the officer). D'Arcy's opinion does not speak to the reasonableness of

---

[8] Relatedly, D'Arcy indicates that a urine sample from Young may have been needed. However, the detention of a person who is merely present during the execution of a search warrant may not be "exploited by the officer or unduly prolonged in order to gain more information . . . ." Ganwich, 319 F.3d at 1124. Given that Young was not the object of the search warrant, and given the purpose of Young's detention was simply to limit his communication, the propriety of holding Young for a theoretical urine sample appears dubious.

Everett's conduct with the understanding that Everett was detaining Young in order to limit Young's communication.  See  Everett Depo. 31:22-26.

Second, D'Arcy does not discuss the use of handcuffs on Young, or explain the reasons that may have justified Everett keeping Young in handcuffs.  That the use of handcuffs may have initially been appropriate when the search warrant was executed does not speak to their continued use after the search of Young's property had ended.  Cf. Mlodzinski, 648 F.3d at 36; Meredith, 342 F.3d at 1062-63.

Third, the Court is not aware of any arguments that Everett should have administered medication to, or treatment on, Young.  What Young is contending is that his detention was unreasonable in part because Everett refused to allow Young to obtain and take Young's own medicine himself.  Everett was likely aware that Young had requested access to this medication 2 to 3 hours beforehand and new that the purpose of the detention was to limit Young's communication.  It is not at all clear how denying Young access to his medication furthers the purpose of Young's detention in any way.  D'Arcy acknowledges that there are no POST standards on this issue, but opines that medication is denied unless there is an emergency.  However, the reasonableness of a policy that requires all detainees, regardless of the reason for detention, to be denied their prescription medication is highly questionable.  Such a policy does not consider that, depending on how prolonged the execution of the search warrant is, and which medications are involved, a medical emergency may well be created precisely because the officers are refusing to give a detainee access to prescription medication.

The Court finds this case to be very similar to *Lee v. City of San Leandro*, 2011 U.S. Dist. LEXIS 59865 (N.D. Cal. June 3, 2011).  The *Lee* case also involved allegations of an unreasonable detention during the execution of a search warrant.  The search warrant in that case also involved multiple properties.  The plaintiff's property was searched first, and a police officer remained with Lee until other officers reached the second property.  See id. at *4 n.3.  Lee made similar allegations to those made by Young.  Because of a failure to respond to requests for admission, Lee was deemed to have admitted that she was not battered, was not injured by any officer, was allowed to use the bathroom, and was allowed to take her medications.  See id. at *4.

1   The district court relied on these admissions to grant the defendants summary judgment.  See id.

2   As an alternative holding, the district court granted defendants summary judgment because the

3   defendants: ". . . submitted evidence, none of which plaintiff has disputed, showing plaintiff was

4   handcuffed only after she failed to comply with a directive not to use the telephone, that the

5   handcuffs were removed when plaintiff asked to use insulin, and, contrary to plaintiff's

6   allegations, that she did not urinate on herself."  Id.  In other words, *Lee* found no constitutional

7   violations where handcuffs were only used when orders limiting communication were disobeyed,

8   Lee did not wet herself, and Lee was permitted to use her insulin.  See id.  These facts are

9   precisely the opposite of the facts in the case at bar.  As such, *Lee* strongly supports the

10  conclusion that Everett's detention of Young was conducted in a constitutionally unreasonable

11  manner.  Cf. id.

12          In summary, the detention of an occupant during a search pursuant to a search warrant

13  must be done in a reasonable manner and the police have limited powers while detaining a

14  building's occupants.  Ganwich, 319 F.3d at 1124 n.15.  Here, instead of simply limiting

15  Young's phone access, Everett continued to keep Young in handcuffs, refused to let him use the

16  restroom, required Young to sit in urine wet pants, and refused to let Young have prescription

17  medication even though Everett likely knew that such requests had been denied 2 to 3 hours

18  earlier and the search of Young's property had ended.  A reasonable trier of fact could find that

19  the detention was unnecessarily degrading, restrictive, and painful and thus, a violation of the

20  Fourth Amendment.  See Franklin, 31 F.3d at 876.  Summary judgment is inappropriate.

21                  3.      Qualified Immunity

22          The Court is not aware of any Ninth Circuit case, pre- or post-December 2007, that has a

23  similar fact pattern to this case.  Nevertheless, the Ninth Circuit has made it clear that the police

24  have limited powers in detaining an individual during the execution of a search warrant.

25  See Ganwich, 319 F.3d at 1124 n.15; Franklin, 31 F.3d at 876.  The law in the Ninth Circuit

26  regarding the use of handcuffs during the execution of a search warrant was clearly established in

27  2003.  See Meredith, 342 F.3d at 1062-63.  As discussed, there is no clear justification apparent

28  or articulated for keeping Young in handcuffs.  Further, it was well established prior to 2007 that

1  detentions pursuant to a search warrant must be conduct in a reasonable manner.  Dawson, 435

2  F.3d at 1066; Franklin, 31 F.3d at 876.  It is true that there is no per se right for a detainee to use

3  the restroom upon demand during the execution of a search warrant.  See Hunter v. Namanny,

4  219 F.3d 825, 831 (8th Cir. 2000).  However, in 2003, the Ninth Circuit recognized that a

5  prolonged detention pursuant to a search warrant without bathroom breaks may violate the

6  Fourth Amendment.  See Ganwich, 319 F.3d at 1124 n.15 (characterizing Heitschmidt v. City of

7  Houston, 161 F.3d 834 (5th Cir. 1998) as holding "that handcuffing and denying a plaintiff

8  bathroom breaks during the search of his residence was not within the scope of a permissible

9  detention under *Summers*.").  As discussed, there is no clear justification that is apparent for

10  preventing Young from using the restroom.  Similarly, there is no clear justification for

11  preventing Young from taking his prescription medication.  As discussed, denying the

12  medication does not seem to further officer safety or limit Young's communication.  Finally, it

13  was well established prior to 2007 that a detention pursuant to a search warrant may be

14  unreasonable if the detention is unnecessarily degrading.  See Franklin, 31 F.3d at 876.  It is self

15  evident that being forced to sit in urine soaked pants is degrading.

16          Given that the search of Young's property had ended, that the purpose of the detention

17  was to limit Young's communication, and that Everett knew that Young had been detained for

18  several hours before hand, the cases of *Meredith*, *Ganwich*, and *Franklin* would have put a

19  reasonable officer on notice that Young's detention was being conducted in a constitutionally

20  unreasonable manner.  Saucier, 533 U.S. at 202; Karl v. City of Mountlake Terrace, 678 F.3d

21  1062, 1073 (9th Cir. 2012); Meredith, 342 F.3d at 1062-63; Ganwich, 319 F.3d at 1124 & n.15;

22  Franklin, 31 F.3d at 876.  Accordingly, qualified immunity will be denied.  See id.

23          B.      Sgt. Marquez

24          Young seeks to hold Marquez liable under a theory of supervisory liability.  A supervisor

25  may be liable under § 1983 only if there exists either:  "(1) his or her personal involvement in the

26  constitutional deprivation, or (2) a sufficient causal connection between the supervisor's

27  wrongful conduct and the constitutional violation."  Snow v. McDaniel, 681 F.3d 978, 989 (9th

28  Cir. 2012).  A sufficient causal connection may be shown *inter alia* when the supervisor directs

that the violation occur or the supervisor sets in motion a series of acts by others which the supervisor knows or reasonably should know would cause the infliction of constitutional harms. Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).

Here, with respect to ordering Everett to the scene, there is nothing unlawful about such an order.  Assuming that Marquez knew that the Visalia officers would ask Everett to "stand by" or detain Young while those officers went to search another location, a similar analysis applies to Marquez as was applied to Everett above.  The cases of *Ganwich*, *Leveto*, *Timpani*, *Robinson*, and *Lee* indicate that the continued monitoring (excluding the manner of monitoring) of Young after the search of his property had ended was constitutional, or alternatively supports application of qualified immunity.

With respect to the manner in which Young was actually detained, there is no indication that Marquez ordered Everett to keep Young in handcuffs and prevent Young from changing clothes, using the restroom, or accessing food, water, or medicine, nor is there evidence that Marquez knew about the manner in which Young would continue to be detained.  Without evidence that Marquez knew how Everett would detain Young or directed Everett how to detain Young, Marquez is not liable for the manner of Young's detention.  See Snow, 681 F.3d at 989; Corales, 567 F.3d at 570.

Summary judgment in favor of Marquez on this cause of action is appropriate.


### III.     Fourth Cause of Action – State Law Causes of Action

*Defendants' Arguments*

Defendants argue that they did not damage any of Plaintiffs' property and did not assault Young.  Defendants further argue that the detention was proper and reasonable under *Summer v. Michigan*.  Therefore, the intentional infliction of emotional distress claim is without merit.

*Plaintiff's Opposition*

Young does not directly address these arguments or this cause of action.

*Discussion*

The arguments regarding the fourth cause of action are less than clear.  The fourth cause

21

1  of action includes the state common law causes of action of conversion, trespass to chattels,

2  assault, and intentional infliction of emotional distress.  See Doc. No. 70 at ¶¶ 41-47.  The factual

3  bases alleged in the fourth cause of action span the time that Young was detained by gunpoint to

4  the time that Young was released by Everett.  See id.

5       Under California law, a civil assault is a "demonstration of an unlawful intent by one

6  person to inflict immediate injury on the person of another then present."  Steel v. City of San

7  Diego, 726 F.Supp.2d 1172, 1189 (S.D. Cal. 2010); see Lowry v. Standard Oil Co., 63

8  Cal.App.2d 1, 6-7 (1944).  Thus, the tort of assault is based on a person's belief that he is about

9  to be touched in an offensive manner by another.  See CACI § 1301.  "The tort of assault is

10 complete when the anticipation of harm occurs."  Steel, 726 F.Supp.2d at 1189; Kiseskey v.

11 Carpenters' Trust for So. Cal., 144 Cal.App.3d 222, 232 (1983).  Here, the basis identified in the

12 complaint for a civil assault involves Young being taken at gunpoint from his shop to his

13 residence.  See Doc. No. 70 at ¶ 44.  The facts presented in this motion show that neither

14 Marquez nor Everett engaged in that conduct.  Thus, summary judgment in their favor is

15 appropriate on this claim.

16      With respect to conversion and trespass to chattels, the same analysis under the second

17 cause of action applies to this claim.  That is, there is no evidence that Marquez actively searched

18 in buildings or damaged any chattel, but Everett has failed to submit evidence that he did not

19 actively search in buildings or damage chattels.  Thus, summary judgment on the conversion and

20 trespass to chattels claims will be granted to Marquez, but denied as to Everett.

21      With respect to intentional infliction of emotional distress, Defendants' essentially adopt

22 their arguments on the reasonableness of the detention.  Thus, the same analysis under the third

23 cause of action applies to this claim as well.  Summary judgment in favor of Marquez is

24 appropriate because there is an insufficient link between the manner of the detention and

25 Marquez.  However, without additional argument and evidence from Everett, summary judgment

26 in favor of Everett is inappropriate because the evidence indicates that the manner of his

27 detention was unreasonable.

28

1

**CONCLUSION**

2       With respect to the first cause of action, summary judgment in favor of Marquez is

3   appropriate as to claims that are based on active searching by Marquez.  However, summary

4   judgment as to Marquez is not appropriate for claims based on an illegal entry.  Marquez

5   acknowledges that he entered several buildings, including the Old Grange Hall, but he has not

6   established a justification for entering those buildings.  Similarly, summary judgment in favor of

7   Everett on the first cause of action is not appropriate because Everett has failed to meet his initial

8   burden of showing that he did not search or enter the buildings.

9       With respect to the second cause of action, summary judgment in favor of Marquez is

10  appropriate because there is no evidence that Marquez either actively searched the buildings or

11  damaged any property.  However, summary judgment in favor of Everett on the second cause of

12  action is inappropriate because Everett has not met his initial burden of showing that did not

13  search buildings or damage property.

14      With respect to the third cause of action, summary judgment in favor of Everett is

15  appropriate on the claim based on the fact that Young was detained after the search of his

16  property had ended.  A limited detention of some sort was appropriate in light of the search

17  warrant, which authorized the search of several properties that were suspected of being connected

18  to an illegal narcotics operation.  Alternatively, qualified immunity for Everett is appropriate.

19  However, summary judgment and qualified immunity is not appropriate for Everett on claims

20  based on the manner of his detention.  The evidence indicates that Young was unreasonably

21  handcuffed, prevented access to a bathroom, denied prescription medication, and forced to sit in

22  urine soaked pants.  However, summary judgment in favor of Marquez on the third cause of

23  action is appropriate because there is an insufficient link between Marquez and the unreasonable

24  manner of the detention.

25      With respect to the fourth cause of action, summary judgment in favor of Marquez is

26  appropriate because the evidence shows that he did not engage in the conduct that forms the

27  bases for the various state law claims.  Summary judgment in favor of Everett on the assault

28  claim is appropriate because he did not engage in the assaultive conduct at issue.  However,

23

because the evidence indicates an unreasonable manner of detention, and because Everett did not meet his burden with respect to actively searching or damaging chattels, summary judgment on the conversion, trespass to chattels, and intentional infliction of emotional distress claims will be denied.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.  Defendant Marquez's motion for summary judgment is:

    a.   GRANTED with respect to claims in the first cause of action that are based on an active search by Marquez;

    b.   DENIED with respect to claims in the first cause of action that are based on an illegal entry by Marquez; and

    c.   GRANTED with respect to the second, third, and fourth causes of action;

2.  Defendant Everett's motion for summary judgment is:

    a.   DENIED with respect to the first and second causes of action;

    b.   DENIED with respect to claims in the third cause of action that are based on the unreasonable manner of Young's detention;

    c.   GRANTED with respect to claims in the third cause of action that are based on the fact that Thad Young was detained after the search of his property had been completed;

    d.   GRANTED with respect to the assault claim in the fourth cause of action; and

    e.   DENIED with respect to the conversion, trespass to chattels, and intentional infliction of emotional distress claims in the fourth cause of action.

IT IS SO ORDERED.

Dated:   August 31, 2012                                        _____

                                                               CHIEF UNITED STATES DISTRICT JUDGE